**MID–STATES AIRCRAFT ENGINES, INC., Appellant (Defendant Below),**

v.

**MIZE COMPANY, INC. and Tony C. Harris, Appellees (Plaintiffs Below).**

No. 4–883A268.

Court of Appeals of Indiana,
Fourth District.

Aug. 28, 1984.

Maurice A. David, Timothy J. Vrana, Sharpnack, Bigley, David & Rumple, Columbus, for appellant.

Steven K. Robison, Montgomery, Elsner & Pardieck, Seymour, Hal Nance Bogard, Roxane Tomasi Reinhardt, Brown, Todd & Heyburn, Louisville, Ky., for appellees.

CONOVER, Judge.

Appellant-Third Party Defendant Mid-States Aircraft Engines, Inc. (Mid-States) appeals the trial court's granting of appellee-defendant-third party plaintiff Mize Co., Inc.'s (Mize) motion to correct errors. This action reversed the trial court's prior determination it had no personal jurisdiction over Mid-States.

We affirm and remand with instructions.

ISSUES

This appeal presents three issues:

1. Whether the trial court erred in admitting the Montgomery affidavit in support of Mize's motion to correct errors.

2. Whether Mid-State's motion challenging *in personam* jurisdiction became a motion for summary judgment when the Miller affidavit was filed in support thereof.

3. Whether the trial court had *in personam* jurisdiction of Mid-States.

FACTS

In 1978, Mize, a North Carolina corporation, and another purchased a 1969 Cessna 421A aircraft registered with the Federal Aviation Administration as N2211Q from Rhoades Aircraft Sales, Inc. (Rhoades), an Indiana Corporation, for $90,000. The contract and security agreement covering this transaction were then assigned to First National Bank of Louisville, Kentucky (Bank). Prior to the sale, Rhoades determined repair work on the airplane's engines was necessary. Mr. Rhoades called Mr. Miller, President of Mid-States and made arrangements for the repair of the engines. Rhoades flew the plane to the Mid-States facility at Tulsa, Oklahoma, for the repair work. The engines on the aircraft were then rebuilt by Mid-States, and warranted as "zero-time" engines, that is, as good as new ones. When the work was completed, Rhoades took delivery of the airplane from Mid-States in Tulsa. The engines were under Mid-States's full warranty for 100 hours or 6 months at the time the aircraft was purchased.

After less than 20 hours of operation, Mize and its partner began experiencing problems with the aircraft's left engine. The malfunctioning engine was removed from the aircraft by Stebbins Aviation, Inc. of Louisville, Kentucky, and forwarded to Mid-States at Tulsa for warranty repair work. Upon completion of this repair work, the engine was returned to Stebbins at Louisville by Mid-States. Because the left engine still had problems, Mize refused to pay for the airplane, and the bank sued Mize in Jackson Circuit Court. Mize in turn filed a third-party complaint against Rhoades and Mid-States.

Mid-States is an Oklahoma corporation with customers throughout the United States. Its only form of advertising at the time was through a national publication called Trade-A-Plane. No advertising was directed specifically to customers in Indiana.

Mid-States responded to the third-party complaint against it by filing an Ind.Rules of Procedure, Trial Rule 12(B)(2) motion to dismiss which challenged the trial court's *in personam* jurisdiction of the court as to Mid-States. In support, Mid-States filed the affidavit of its president, Mr. Miller, which related the above facts pertaining to jurisdiction. Mize filed no countervailing affidavits or other evidence at or prior to the trial court's hearing on Mid-States's motion to dismiss. At the hearing, Mize's counsel told the court it was not prepared to present evidence because it had discovered evidence of other transactions between Mid-States and Indiana residents only the day before the hearing. However, Mize did not move for continuance and the hearing proceeded. During the hearing, Mid-States's attorney said:

> I think we can assume for purposes of this Motion that [Mid-States] does receive business from the state of Indiana and in this particular case received business from the state of Indiana and would do so again. (R. 62).

The trial court subsequently granted Mid-States's motion to dismiss and entered judgment thereon.

Mize then filed a motion to correct errors supported by the affidavit of Margarett Montgomery (Montgomery), an employee of Rhoades, attached to which were 23 pages of exhibits purporting to be billings by Mid-States to Rhoades for repair work performed between November 1976 and June 1982. The trial court considered the Montgomery affidavit during the hearing on the motion to correct errors. It then granted Mize's motion and reinstated Mid-States as a third-party defendant.

Mid-States appeals.

## DISCUSSION AND DECISION

### I. Admissibility of the Montgomery Affidavit

Mid-States contends the Montgomery affidavit was not T.R. 59(A)(6)[1] newly discovered evidence. Mize argues, however, it constitutes T.R. 59(H)(1)[2] evidence outside the record. Mize also says the trial court gave it no notice the motion to dismiss would be treated as one for summary judgment under T.R. 56, and evidence would be taken at the hearing thereon. The trial court corrected this error by admitting the Montgomery affidavit at the hearing on the motion to correct errors, Mize opines.

We agree with Mid-States. The affidavit should not have been considered.

■ Under then T.R. 59(D), now with minor changes T.R. 59(H)(1), affidavits concerning matters which occur during proceedings before the court but not reflected in the record may be filed in support of a motion to correct errors. T.R. 59(H)(1) affidavits may not be used to present evidence the party neglected to offer during the proceeding. *Collins v. Dunifon,* (1975) 163 Ind.App. 201, 206–207, 323 N.E.2d 264, 268; *see also Citizens Bank and Trust Co. of Washington v. Gibson,* (1984) Ind.App., 463 N.E.2d 276, 282, n. 3 (transfer pending). The Montgomery affidavit did not concern matters occurring at the prior hearing but not reported. The question then becomes whether it contained T.R. 59(A)(6) newly discovered evidence.

---

1. T.R. 59(A)(6) provides, in part
   (A) Motion to correct error—Bases for. The bases for a motion to correct error are established, without limitation, as follows:

   . . . . .

   (6) Newly discovered material evidence which could not, with reasonable diligence have been discovered and produced at the trial; . . . .

2. T.R. 59(H)(1) says
   (H) Motion to correct error based on evidence outside the record.
   (1) When a motion to correct error is based upon evidence outside the record, the motion shall be supported by affidavits showing the truth of the grounds set out in the motion and the affidavits shall be served with the motion.

Newly discovered evidence must be

1. material,
2. more than cumulative or impeaching,
3. shown not to have been discoverable before trial by the exercise of due diligence, and
4. evidence which would reasonably and probably change the outcome of the trial.

*Mikesell v. Mikesell,* (1982) Ind.App., 432 N.E.2d 55, reh. den'd 436 N.E.2d 94. *See also Kelly v. Bunch,* (1972) 153 Ind.App. 407, 409, 287 N.E.2d 586, 588–89, n. 1.[3] Here, Mize did in fact discover the evidence before the motion to dismiss hearing. Thus, it is not "newly discovered" as that term is used in T.R. 59(A)(6), and should not have been considered by the trial court during its hearing on the motion to correct errors.

## II. T.R. 12(B)(2) Procedure

Mize also says because Mid-States's motion to dismiss became a motion for summary judgment under T.R. 56 when the Miller affidavit was filed, the trial court should have given Mize notice it would be so treated and evidence would be received at the hearing on the motion to dismiss. It cites *Ventura County, State of California v. Neice,* (1982) Ind.App., 434 N.E.2d 907 in support of its contention. We disagree.

In *Ventura County,* the defendant filed a T.R. 12(B) motion to dismiss alleging as grounds lack of jurisdiction over the person under subdivision (2) and failure to state a claim upon which relief could be granted under subdivision (6). We said the motion should have been treated as one for summary judgment under T.R. 12(B)(8). Mize overlooks the fact T.R. 12(B)(8) only refers to T.R. 12(B)(6) motions. They are converted to motions for summary judgment when matters outside the pleadings are con-

sidered by the trial court. Here, only lack of jurisdiction of the person under subdivision (2) is alleged by Mid-States. Thus, *Ventura County* is inapplicable to these facts.

In *Suyemasa v. Myers,* (1981) Ind.App., 420 N.E.2d 1334, 1340, Ratliff, J. said

A defendant may challenge the jurisdiction of the trial court over him either by affirmative defense as enumerated in Ind.Rules of Procedure, Trial Rule 8(C) or by motion to dismiss pursuant to Ind. Rules of Procedure, Trial Rule 12(B)(2). When a defendant attacks the jurisdiction over his person, he bears the burden of proof upon that issue unless the lack of jurisdiction is apparent upon the face of the complaint. Since matters of jurisdiction are often not apparent on the face of the complaint, a challenge to a trial court's jurisdiction over a defendant may require the taking of extensive evidence through affidavits, depositions, interrogatories, and oral testimony. *See, Data Disc, Inc. v. Systems Technology Associates, Inc.* (9th Cir.1977) 557 F.2d 1280; .... The trial court must then determine what acts the defendant did and whether such acts are sufficient to render him amenable to service of process under the "long-arm" statute. (Citations omitted.)

A motion to dismiss for failure to state a claim raises matter in bar. If sustained, the result is a judgment on the merits. Conversely, defenses numbered (1)–(5) and (7) of T.R. 12(B) do not. Only matters on the merits can be raised under a T.R. 56 motion for summary judgment. If a judgment is rendered thereunder it is one in bar. Thus, it was reasonable to integrate the T.R. 12(B)(6) failure to state a claim defense with the T.R. 56 motion for summary judgment rule, and not integrate

---

**3.** This case involves admission of newly discovered evidence following a pre-trial proceeding, rather than a full trial. We have not discovered a case specifically applying these criteria to evidence supporting a motion to correct errors after a pre-trial ruling has been certified for appeal. Nevertheless, both parties have argued these criteria in discussing admissibility of the Montgomery affidavit. Further, we perceive no significant difference between applying these criteria to newly discovered evidence supporting a motion to correct errors following a T.R. 12(B)(2) hearing as well as to a motion to correct errors following a trial.

the other T.R. 12(B) defenses therein. Though not binding upon us, we have found the following materials instructive: 2A *Moore's Federal Practice*, (2nd Ed.) ¶ 12.09[3], at 2313. *See* 6 *id.*, ¶ 56.02[3], at 56–27—56–33. *Accord, Attwell v. LaSalle National Bank,* (5th Cir.1979) 607 F.2d 1157, 1161, *cert. denied* (1980) 445 U.S. 954, 100 S.Ct. 1607, 63 L.Ed.2d 791; *O'Donnell v. Wien Air Alaska, Inc.,* (9th Cir.1977) 551 F.2d 1141, 1145, n. 4; *Hubicki v. AFC Industries, Inc.,* (3rd Cir. 1973) 484 F.2d 519, 522–23. *Cf. Brennan v. Rhoades,* (6th Cir.1970) 423 F.2d 706.

■ Indiana courts historically have treated motions challenging personal jurisdiction as raising matters in abatement rather than in bar of the claim. *See Weenig v. Wood,* (1976) 169 Ind.App. 413, 417–20, 349 N.E.2d 235, 239–41, and authorities cited. Accordingly, T.R. 12(B)(2) motions need not receive T.R. 56 motion for summary judgment treatment when supporting materials are filed. The procedure by which a trial court reaches its decision on a T.R. 12(B)(2) challenge to *in personam* jurisdiction is within the sound discretion of the trial court. The trial court here did not abuse its discretion in this regard.

### III. T.R. 12(B)(2) Burden of Proof

■ In Indiana, jurisdiction is presumed, and need not be alleged under T.R. 8(A). *See Weenig,* 169 Ind.App. at 420, 349 N.E.2d at 240. A party challenging jurisdiction must establish lack thereof by a preponderance of the evidence unless lack of jurisdiction is apparent on the face of the complaint. *Suyemasa,* 420 N.E.2d at 1340; *Weenig,* 169 Ind.App. at 418–21, 349 N.E.2d at 239–41; T.R. 8(C). Since we have determined the Montgomery Affidavit did not contain T.R. 59 newly discovered evidence, we have considered this matter only in light of the pleadings, the Miller affidavit, and Mid-States's counsel's admission made during the T.R. 12(B)(2) hearing.

■ Based upon these materials, it is apparent Mid-States did not make out a prima facie showing of lack of personal jurisdiction. The trial court erred by sustaining that motion. However, this error was corrected when Mize's motion to correct errors was sustained. Though the trial court erred by considering the Montgomery affidavit, such error was harmless. We will sustain the trial court's action if any basis therefor appears in the record. *Cain v. State,* (1973) 261 Ind. 41, 46–46, 300 N.E.2d 89, 92; *Viccaro v. City of Fort Wayne,* (1983) Ind.App., 449 N.E.2d 1161, 1162.

### IV. In Personam Jurisdiction

Discussing the due process principles involved in a determination of whether Indiana courts have *in personam* jurisdiction over non-residents, Judge Sullivan said:

To exercise jurisdiction consonant with due process over a non-resident defendant, "certain minimum contacts" must exist between the non-resident defendant and the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 *quoting Milliken v. Meyer* (1940) 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278....

The factors to be considered in determining whether fair play and substantial justice standards have been met may be summarized as follows: (1) the nature and quality of the contacts with the forum state; (2) the quantity of contacts with the state; (3) the relationship between those contacts and the cause of action; (4) the interest of the forum state in providing a forum for its residents; and (5) the convenience of the parties. (citations omitted) The first three are the primary factors in determining whether *International Shoe* standards are met.

*Tietloff v. Lift-A-Loft, Corp.,* (1982) Ind. App., 441 N.E.2d 986, 989.

■ Mid-States contends its only contacts with Indiana have been advertisements in Trade-A-Plane, a national publication, and the telephone call from Rhoades

which initiated this transaction. However, during the T.R. 12(B)(2) hearing its counsel stated Mid-States had received business from Indiana on other occasions, received business from Indiana in this case, and would do so again. This statement constitutes an admission and thus, relevant evidence on the subject. *Hays v. Hynds,* (1867) 28 Ind. 531, 533; *Lystarczyk v. Smits,* (1982) Ind.App., 435 N.E.2d 1011, 1014; 4 J. Wigmore, *Evidence* (Chadbourne Rev.1972) Sec. 1063, p. 63; McCormick's *Handbook of the Law of Evidence* (E.W. Cleary, Gen.Ed., 2d ed., 1972) at p. 643. Attorneys are the agents of their clients with respect to specific litigation. *Blessing v. Dodds,* (1876) 53 Ind. 95; *Solar Sources, Inc. v. Ind. Air Pollution Control Bd.,* (1980) Ind.App., 409 N.E.2d 1136, 1138.

Further, Rhoades sent the airplane to Mid-States for repair work. The other contacts between Mid-States and Indiana residents apparently also involve aircraft repairs. Thus, Mid-States's business contacts with Indiana residents are specifically related to the cause of action. This factor also supports the jurisdiction of Indiana Courts in this action.

Finally, Rhoades, an Indiana corporation, sold the aircraft to Mize, a North Carolina corporation. Mize now sues Rhoades because of Mid-States's ineffective repair work on the engines. Rhoades has an interest in defending itself in this state against Mize's claims. Evidence concerning the details of Mid-States's business transactions is likely available here. Thus, Indiana has an interest in providing a forum for Rhoades, one of its citizens.

While Mid-States may encounter some difficulty by litigating in Indiana we further note the divergent residences of these various parties. Mize is from North Carolina, the bank is from Kentucky and Rhoades is from Indiana. On balance, it seems Indiana provides a relatively central location for the totality of this litigation. Further, it does not appear Mid-States has been unduly burdened thus far because Indiana is the forum state.

The Washington Circuit Court has *in personam* jurisdiction of Mid-States.

We affirm, and remand this cause for further proceedings consistent with this opinion.

MILLER, P.J., and YOUNG, J., concur.