Cheryl **OGLE**, Appellant (Plaintiff),

v.

**ST. JOHN'S HICKEY MEMORIAL HOSPITAL d/b/a St. John's Medical Center, Appellee (Defendant).**

No. 2–184A26.

Court of Appeals of Indiana, Second District.

Feb. 11, 1985.

Rehearing Denied April 12, 1985.

Raymond F. Fairchild, Indianapolis, for appellant.

Michael A. Bergin, Kevin Charles Murray, Locke, Reynolds, Boyd & Weisell, Indianapolis, for appellee.

BUCHANAN, Chief Judge.

## CASE SUMMARY .

Plaintiff-appellant Cheryl Ogle (Ogle) appeals the trial court's dismissal by way of summary judgment of her negligence action against St. John's Hickey Memorial Hospital d/b/a St. John's Medical Center (St. John's) because of Ogle's failure to comply with the provisions of the Indiana Medical Malpractice Act [hereinafter cited as the Act].[1]

We affirm.

## FACTS

The facts most favorable to the non-moving party, Ogle, reveal that she was committed to the psychiatric ward at St. John's on December 22, 1982, as a result of a suicide attempt. Ogle was attacked and raped by another patient on December 28, 1982, while still committed to the psychiatric unit.

On March 25, 1983, Ogle filed a two-count complaint against St. John's. The first count alleged St. John's "negligently failed to provide proper security and negligently failed to protect the plaintiff [Ogle] from harm." *Record* at 5. The second count asserted liability on the basis of res ipsa loquitur. *Record* at 6.

St. John's responded, on April 11, 1983, with a motion to dismiss and alternative motion for summary judgment. Accompanying this motion was an affidavit by the custodian of records filed pursuant to the Act, attesting that St. John's was in compliance with the statutory requirements of the Act and that no proposed complaint on Ogle's behalf had been filed for review by a medical review panel as required by the Act. On July 8, 1983, Ogle countered with

1. Ind.Code 16–9.5–1–1 to –10–5 (1982). The Act was held to be constitutional by the Indiana Supreme Court in *Johnson v. St. Vincent Hosp.,* (1980) 273 Ind. 374, 404 N.E.2d 585.

her own affidavit which merely parroted her complaint.

The matter came before the trial court for hearing on July 11, 1983; on October 11, 1983, the trial court dismissed Ogle's complaint for lack of jurisdiction, based on Ogle's failure to file a proposed complaint for review by a medical review panel, and entered summary judgment in favor of St. John's.

Ogle's motion to correct error was overruled on December 13, 1983, and she appeals.

### ISSUE

One issue is presented for review:[2] Did the trial court err as a matter of law in concluding that Ogle's cause of action is controlled by the Act?

### DECISION

PARTIES' CONTENTIONS—Ogle asserts her allegation of failure to provide security and protection is not within the purview of the Act because the failure to provide security and protection is not based on "health care or professional services", a medical review panel would serve no useful purpose as the provision of security and protection is not a matter within its expertise, and St. John's potential liability would be covered by general liability insurance. Thus, she concludes the purpose of the Act is not advanced by including her cause of action within its parameters. She urges that this court find a distinction between "ministerial" acts such as those she alleges in her complaint and "classical" acts of malpractice to give effect to the intent of the legislature, and she relies on *Winona Memorial Found. v. Lomax* (1984), Ind. App., 465 N.E.2d 731, *trans. denied,* as the paragon of reasoning this court should adopt.[3]

St. John's counters that Ogle's complaint falls squarely within the confines of the Act. Relying on *Methodist Hosp. v. Rioux* (1982), Ind.App., 438 N.E.2d 315, its position is that Ogle's allegation of negligence amounts to a failure to provide a proper environment during Ogle's hospital confinement and, while a hospital is not an insurer, a hospital does have a duty to exercise the necessary care to provide a safe environment for its patients.

CONCLUSION—Ogle's complaint, alleging negligent failure to provide security and protection, falls within the language of the Act. Because Ogle failed to comply with the Act by filing a proposed complaint for review by a medical review panel, the trial court, as a matter of law, properly granted summary judgment for St. John's.

Those seeking to avoid coverage under the Act travel a rocky road. The framers of the Act used *broad* language. *Id.*

Two provisions need to be examined carefully. The first is IC 16–9.5–9–2 which declares,

> "[n]o action against a health care provider may be commenced in any court of this State before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel."

[Hereinafter cited as the Review Requirement].

The other relevant statute is IC 16–9.5–1–1, which defines the terms relevant to our inquiry:

> "...
>
> (h) 'Malpractice' means *any tort* or breach of contract *based on health care or professional services* rendered, or which should have been rendered, by a *health care provider,* to a patient. [Hereinafter cited as Malpractice Definition].

---

**2.** Ogle also challenges the constitutionality of the Act as it applies to her situation; however, she does so without the benefit of argument or citation to authority. The issue is waived. *See* Ind.Rules of Procedure, Appellate Rule 8.3(A)(7). Absent waiver, the issue has been decided adversely to Ogle's position. *See Cha v. Warnick,* (1983) Ind.App., 455 N.E.2d 1165, *trans. denied.*

**3.** Counsel ably discussed this case in oral argument, at our request.

(i) 'Health care' means *any act, or treatment* performed or furnished, or which should have been performed or furnished, *by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement.* [Hereinafter cited as Health Care Definition]."

(Emphasis supplied).

 The admonition is ever with us that "[i]n construing a statute, it is the duty of this court to give effect to the intention of the legislature." *Marion County Dep't of Pub. Welfare v. Methodist Hosp.* (1982), Ind.App., 436 N.E.2d 123, 126; *see also Park 100 Dev. Co. v. Indiana Dep't of State Revenue* (1981), Ind., 429 N.E.2d 220. However, it is also a truism that "when the legislature provides a definition of a word, courts are bound by it, regardless of other possible meanings attributable to the word." *Ware v. State* (1982), Ind.App., 441 N.E.2d 20, 23, *trans. denied; see also State v. Grange* (1929), 200 Ind. 506, 165 N.E. 239. Further, we will construe statutes regarding the same subject in a manner so as to give harmonious effect to each, i.e., in pari materia. *See State v. Davies,* (1978) 177 Ind.App. 288, 379 N.E.2d 501; 2A N.J. SINGER, SUTHERLAND STATUTORY CONSTRUCTION § 51.01 (1984).

There is legislative history to the Act which is also helpful in interpreting the broad language of the Act. The legislature was concerned about a perceived threat to the providing of health care services to the public resulting from soaring costs and limitations in the availability of medical malpractice insurance. *Johnson, supra; Lomax, supra.* The response was to enact a comprehensive, voluntary insurance program for health care providers. *Johnson, supra.*

Judge Ratliff succinctly analyzed this legislative action in *Sue Yee Lee v. Lafayette Home Hosp., Inc.* (1980), Ind.App., 410 N.E.2d 1319, 1324, *trans. denied,* and concluded:

"Viewed from the historical perspective we believe the conclusion is inescapable that *our General Assembly intended that all actions the underlying basis of which is alleged medical malpractice are subject to the act....* [T]he obvious purpose of the act is to provide some measure of protection to health care providers from malpractice. claims, and to *preserve the availability of the professional services of physicians and other health care providers* in the communities and thereby protect the public health and well-being...."

(Emphasis supplied). This analysis is supported by the language of the Act itself. The legislature specifically defined health care providers, and that definition covers a broad range of entities from medical doctors to dentists and blood banks, among others. IC 16–9.5–1–1(a). The common element in all these definitions is that they are entities *providing health care and related services.* A similar concept is reflected in the Malpractice Definition and the Health Care Definition. The specific language *"any tort ... based on health care or professional services rendered ... by a health care provider"* in the Malpractice Definition and "any act, or treatment performed ... or which should have been performed ... by any health care provider for, to, or *on behalf of a patient"* in the Health Care Definition, (emphasis supplied), must reasonably be read as an expression of legislative intent to limit the coverage of the Act to allegations which arise out of the health care provider-patient relationship. We turn now to the question of whether Ogle's cause comes within the confines of the Act.

 Ogle's hand seems to fit neatly into the definitional glove of health care. She alleges an act (the providing of protection), which should have been performed ("negligently failed to provide...."), by a health care provider (St. John's), for a patient (Ogle), during the patient's confinement (Ogle's confinement in the psychiatric ward because of her suicidal tendency).[4]

**4.** Unlike *Lomax, supra,* which was a slip and fall case involving janitorial neglect.

The providing or not providing of suitable confinement for such a patient can hardly be classed as anything other than a professional judgment based on medical knowledge under the terms of the Act as written. This is true even though the harm experienced was not another attempt at self-destruction. Proper limitations on exposure of a mentally ill patient to the public or to other patients is necessarily a medical judgment. The legislature expressly recognized that proper confinement is an act of medical care as it drafted the Health Care Definition section to encompass acts occurring during *"the patient's* medical care, treatment or *confinement."* (Emphasis supplied).

This court has previously held that neither the guarding and protection of mental patients nor the decision to restrain a patient confined in a wheelchair are medical acts. *See Breese v. State* (1983), Ind.App., 449 N.E.2d 1098, *trans. denied; Emig v. Physicians' Physical Therapy Serv.* (1982), Ind.App., 432 N.E.2d 52, *trans. denied; Fowler v. Norways Sanitorium* (1942), 112 Ind.App. 347, 42 N.E.2d 415. While these cases seemingly support Ogle's contention of mere ministerial negligence, they were *not* decided under the provisions of the Act. In effect, they have been overruled by exercise of the legislative will expressed in broad language. Moreover, because we find Ogle's allegation to constitute health care within the meaning of the Act, expert opinion testimony of a medical review panel may well be needed to shed light upon the situation. Indeed, it is reasonable to believe that Ogle's proper confinement constitutes a part and parcel of the diagnosis and treatment of her condition. *Cf. Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215 (the signing of commitment papers to mental hospital constitutes health care); *Breese, supra,* at 1105, (the practice of medicine consists of diagnosing the malady, determining the proper remedy, and applying the remedy to the illness).

As it is uncontroverted that Ogle did not file a proposed complaint for review with the medical review panel, *see Cha, supra,*

summary judgment was properly granted in favor of St. John's.

Affirmed.

SULLIVAN and SHIELDS, JJ., concur.