**METHODIST HOSPITAL OF INDIANA, INC., Appellant (Defendant Below),**

v.

**Robert W. RAY, Appellee (Plaintiff Below).**

No. 49A02–8806–CV–0246.

Court of Appeals of Indiana, Second District.

March 14, 1990.

David S. Allen and Todd J. Kaiser, Locke Reynolds Boyd & Weisell, Indianapolis, for appellant.

Earl C. Townsend, Jr., Earl C. Townsend III, and Kathy A. Lee, Townsend Yosha & Cline, Indianapolis, for appellee.

SULLIVAN, Judge.

This is an interlocutory appeal brought by Methodist Hospital (defendant below) from the denial of its Motion to Dismiss.

We affirm.

On February 5, 1988, Robert W. Ray (Ray) filed a complaint against Methodist Hospital (Methodist). Ray's complaint alleged:

"1. That Plaintiff Robert W. Ray became a patient in Defendant's hospital on December 15, 1986, for the purpose of having a kidney stone destroyed and he remained there until December 17, 1986, until said kidney labistone was performed.

2. That during his hospitalization, Defendant negligently and carelessly caused and permitted its premises to become infested and infected with the deadly Legionnella Pneumonia virus bacteria commonly known as Legionnaire's Pneumonia Virus." Record at 3.

The complaint further alleged various injuries and sought compensation of One Million Dollars.

On March 11, 1988, Methodist filed a T.R. 12(B)(1) motion to dismiss, based upon its position that because plaintiff's case should have first been submitted to a Medical Review Panel under I.C. 16-9.5-1-1, *et seq.*, the trial court lacked subject matter jurisdiction. Accompanying the motion was an affidavit by a representative of the Department of Insurance to the effect that a medical review panel opinion had not been rendered.[1] The trial court denied the Motion and at Methodist's request, certified the following issue for appeal:

"Whether an action for the injury of a patient against a hospital, qualified under the Indiana Medical Malpractice Act, is governed by that Act, where the allegation is that the hospital failed to provide a clean and sterile environment for the patient's care." Record at 65.

It should be noted that in his brief Ray states that the issue as certified is not a correct statement of the issue to be decided. Specifically, Ray points out that his complaint did not allege that Methodist failed to provide a *sterile* environment and charges that Methodist is attempting to force this case within the grouping of cases holding that failure to provide a sterile environment falls under the Medical Malpractice Act. *See e.g., Cashio v. Baton Rouge General Hospital* (1979) 1st Cir., La.App., 378 So.2d 182.

Methodist responds that Ray is bound by the issue as certified because he did not object to the manner in which it was phrased. Methodist cites rather dubious support for this proposition: some general caselaw holding that failure to object to testimony or evidence at trial amounts to waiver on appeal. Methodist also cites to T. Smith and A. Debonis, Jr. *Appellate Handbook for Indiana Lawyers* Sec. 21:14 (1987) which notes that the Indiana Rules of Appellate Procedure provide no guidelines for the filing of objections to certification in the Court of Appeals.

Whether the issue as certified is correct and whether plaintiff has waived any opposition to it for failing to object

---

1. The affidavit stated in pertinent part:

"6. I have determined that no Proposed Complaint has been filed by or on behalf of Robert W. Ray for any period of time while he may have been a patient at Methodist Hospital in 1986 and that no Opinion concerning any such allegations against Methodist Hospital has been rendered by a medical review panel." Record at 7.

The affidavit was dated March 10, 1988. During oral argument before this court on January 31, 1990, plaintiff's counsel indicated that a filing had been made with the Commissioner of the Department of Insurance.

before appeal are merely threshold issues which are not dispositive. The dispositive issue is whether or not the allegations of Ray's complaint sound in ordinary negligence for premises liability or whether they assert a failure to provide the type of care that would bring the claim within the Medical Malpractice Act and thus require dismissal for lack of subject-matter jurisdiction. This framing of the issue, of course, rests upon the assumption that if a complaint sounds in ordinary negligence it does not fall within the purview of the Medical Malpractice Act. Current caselaw supports this view. *Winona Memorial Foundation of Indianapolis v. Lomax* (1984) 4th Dist., Ind.App., 465 N.E.2d 731.

Our discussion turns upon who bears the burden on a 12(B)(1) motion and, more fundamentally, upon a determination of legislative intent with respect to the initial forum for complaints asserted by patients against health care providers. If the assumption is made that with the exception of some very limited circumstances all such cases were intended to be included within the Medical Malpractice Act (Act), then plaintiff must allege facts to take the claim outside the Act or suffer dismissal for failure to comply with the Act's jurisdictional prerequisite. *See e.g., Methodist Hospital v. Rioux* (1982) 4th Dist. Ind.App., 438 N.E.2d 315. On the other hand, if we begin with the assumption that only certain cases involving patients and providers were intended to come within the scope of the Act, then it is up to defendant-provider to demonstrate that a claim against the provider is within the Act and thus requires compliance with the Act's jurisdictional prerequisite.

Both the *Rioux* and the *Lomax* cases were "slip and fall" cases decided by the Fourth District of this court. In the *Rioux* case, the complaint alleged that the hospital negligently and carelessly failed to provide appropriate care to prevent plaintiff's fall and injury. Presiding Judge Young with Judges Miller and Conover, concurring, determined that the complaint was within the Act upon grounds that the Act applied to:

"any legal wrong, breach of duty, or negligent or unlawful act or omission proximately causing injury to another based on any act or treatment performed or furnished, or which should have been performed or furnished by the hospital for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." *Rioux, supra,* 438 N.E.2d at 316.

The *Lomax* case involved a complaint which alleged negligent maintenance of the floor area where the plaintiff fell. Judge Miller, with Presiding Judge Conover and Judge Young, concurring, first determined that the complaint sounded in premises liability and, second, that the Act, taken as a whole, was ambiguous as to whether such a claim by a patient against a health care provider is within the scope of the Act. The Fourth District of our Court then turned to issue of legislative intent. The court cited and quoted from *Johnson v. St. Vincent Hospital, Inc.* (1980) 273 Ind. 374, 404 N.E.2d 585, 590, in which our Supreme Court discussed the purpose of the Act in terms of the "high cost and even unavailability" of malpractice insurance. These considerations were connected to perceived excessive settlements/judgments in large part based on "the processes by which evidence of negligent conduct was being gathered, evaluated and used." *Johnson,* 404 N.E.2d at 590. The Fourth District in *Lomax* concluded that the purpose of the Act's passage had nothing to do

"with the sort of liability any health care provider—whether a hospital or a private practitioner—risks when a patient, or anyone else, is injured by the *negligent maintenance* of the provider's business premises." *Lomax, supra,* 465 N.E.2d at 739. (Emphasis supplied.)

Therefore, Lomax's complaint, sounding in ordinary negligence and "within the common knowledge and experience" of the jury was not within the scope of the Act. *Lomax, supra,* 465 N.E.2d at 740. To the extent that *Rioux* was contrary, it was held to be dictum. *Lomax, supra,* 465 N.E.2d 731, 742.

Another Indiana case pertinent to our discussion is *Ogle v. St. John's Hickey Memorial Hospital* (1985) 2d Dist. Ind. App., 473 N.E.2d 1055. In that case, a patient in the psychiatric unit of defendant hospital was raped by another patient. Ogle's complaint alleged negligent failure to provide security and protection. We held that the complaint alleged a failure to provide health care because Ogle's proper confinement was "part and parcel of the diagnosis and treatment of her condition." *Id.* at 1059. In reaching this result, we relied upon *Detterline v. Bonaventura* (1984) 3d Dist. Ind.App., 465 N.E.2d 215, which held that the Act was applicable because the signing of commitment papers by a doctor constituted an act of health care and in light of I.C. 16–9.5–1–1(i) (Burns Code Ed.1983) which defines health care as including "the patient's medical care, treatment, or *confinement*."[2] [Emphasis supplied.] We were also persuaded by the following analysis in *Sue Yee Lee v. Lafayette Home Hospital, Inc.* (1980) 1st Dist. Ind.App., 410 N.E.2d 1319, 1324, *trans. denied:*

"Viewed from the historical perspective we believe the conclusion is inescapable that our General Assembly intended that all actions the underlying basis for which is alleged medical malpractice are subject to the act."

On its face, Ray's complaint does not allege acts the underlying basis of which are necessarily medical malpractice. It does not allege failure of appropriate care. Rather it alleges negligent maintenance un-

related, at least on its surface, to any scheme of health care. In light of Indiana case law, we are not persuaded that a complaint which on its face sounds in ordinary negligence or premises liability requires dismissal for failure to comply with the Medical Malpractice Act.[3]

Methodist cites *Rioux, Lomax* and *Ogle, supra,* as representing a "consistent line of reasoning" supporting dismissal of Ray's complaint. Appellant's brief, p. 6. We agree that these cases are consistent, but disagree that they support Methodist's view that its 12(B)(1) motion should have been granted.

The *Rioux* case, 438 N.E.2d 315, involved the filing of a Motion for Summary Judgment challenging a complaint which alleged acts or omissions bringing it within the malpractice act. Because plaintiffs did not respond with affidavits to demonstrate the case was properly outside the act, it was held error to deny defendant's motion for summary judgment.

In the *Ogle* case, 473 N.E.2d 1055, defendant-hospital filed a motion to dismiss for lack of jurisdiction and, in the alternative, a motion for summary judgment. The trial court dismissed the complaint for lack of jurisdiction and entered summary judgment in favor of the hospital. Appellate review was upon the question whether the trial court erred as a matter of law. We held that no error occurred because the complaint alleging acts or omissions relating to plaintiff's confinement necessarily implicated the malpractice act. Implicit in

**2.** Compare *Ogle* with *Reaux v. Our Lady of Lourdes Hospital* (1986) La.App., 492 So.2d 233, *writ denied.* A wrongful death action for the assault, rape and battery of a patient by an intruder was held not to come within Louisiana's Medical Malpractice Act, which is patterned after our own. The court determined the tort claim was not based on healthcare services.

**3.** Defendant directs our attention to caselaw from other jurisdictions with malpractice legislation similar to ours, citing *Cashio v. Baton Rouge General Hospital* (1979) 1st Cir., La.App., 378 So.2d 182, as particularly persuasive. There, plaintiffs sued for damages where a patient died as a result of "hospital staph" infection acquired during surgery. Plaintiffs contended that the facts alleged were encompassed

by the duty owed by a premises owner. The appellate court disagreed, determining that one of the obligations of a hospital to a patient was to provide clean and sterile facilities and that a claim alleging infection by "hospital staph" was within the conduct classified by the Louisiana Medical Malpractice Act. The court acknowledged that a hospital might be liable as a premises owner in "situations outside of malpractice, such as in slip-and-fall and similar tort cases." *Id.* at 185. *Cashio* is not dispositive of the issues raised here. The complaint alleged a failure of appropriate care during surgery and further characterized the patient's death as resulting from *"hospital"* staph. In contrast, Ray alleges negligent maintenance in a situation not necessarily unique to hospitals.

our decision was that there were no genuine issues of material fact to remove the case from coverage of the Act.

The *Lomax* case also involved the review of a trial court ruling on a summary judgment motion. Hospital appealed the denial of its motion and the granting of partial summary judgment in plaintiff's favor. The judgment was affirmed because the complaint "clearly and unambiguously" constituted a premises liability claim and

"Secondly, unlike the plaintiffs in *Rioux*, Lomax did not simply rest on her pleadings in the face of Winona's motion for summary judgment supported by affidavit. Rather, Lomax filed an affidavit of her own that showed she was unattended by any of Winona's employees at the time of her fall, i.e., she clearly was not receiving care or treatment at that time. This served to further clarify that her claim was not within the coverage of the Act. The *Rioux* plaintiffs' failure to present such evidence on the record in a form allowed for by the Trial Rules left this court with no option but to hold that the trial court should have granted the hospital's motion for summary judgment pursuant to Trial Rule 56(E)." *Lomax, supra*, 465 N.E.2d at 742.

Methodist contends that because Ray did not come forward with facts to take the case outside the Act, its Motion should have been granted. Imposition of such a requirement would have been inappropriate. Ray was never placed in the procedural posture of having to come forward with factual assertions other than those alleged in the complaint.

■ Methodist filed a T.R. 12(B)(1) motion to dismiss for lack of jurisdiction, accompanied by the Department of Insurance affidavit. Such a motion does *not* convert to a Motion for Summary Judgment. *See* W. Harvey, *Indiana Practice: Rules of Procedure Annotated* at 598 (2d ed.1987); *Mid–States Aircraft Engines v. Mize Co.* (1984) 4th Dist. Ind.App., 467 N.E.2d 1242, 1246–47. Methodist, as the party challenging jurisdiction, had the burden to establish the lack of it. *Alberts v. Mack Trucks, Inc.* (1989) 3d Dist. Ind.App., 540 N.E.2d

1268, 1270–71, *trans. pending; Mid–States v. Mize, supra*, 467 N.E.2d 1242. Methodist would be relieved of this burden only if a lack of jurisdiction was apparent upon the face of the complaint. *Id.* Ray's complaint, sounding as it does in ordinary negligence, does not relieve Methodist of its burden. The only factual matter of record other than the complaint is the affidavit stating that a panel opinion had not been rendered. This is insufficient to divest the court of jurisdiction in this case.

■ In relation to our decision we deem it appropriate to address an issue presented during oral argument. During that proceeding, Methodist suggested that *Lomax* was incorrectly decided. Methodist asks us to review that decision and to interpret our Medical Malpractice Act as all-inclusive. That is, that the mere allegation of a patient-provider relationship is enough to bring a case within the Act and therefore trigger the need for plaintiff to come forward with facts which would remove the complaint from the scope of the Act. Because Ray's complaint alleges a patient-provider relationship and no supporting affidavits were filed in response to the Motion to Dismiss, Methodist asserts that the trial court was required to dismiss the complaint. In support of its argument, Defendant cited to *Ogle, supra*, 473 N.E.2d at 1057:

"Those seeking to avoid coverage under the Act travel a rocky road. The framers of the Act used *broad* language." (Original emphasis.)

While it is true that plaintiffs such as Ray may be required to traverse a difficult path, we decline Methodist's invitation to make the road totally impassable. There is no support for Methodist's interpretation of the Act. Caselaw in Indiana and other jurisdictions consistently acknowledge that certain patient-provider cases fall outside the scope of medical malpractice. *See Lomax, supra*, 465 N.E.2d 731; *Rioux, supra*, 438 N.E.2d 315. *See also Stapler v. Alton Ochsner Medical Foundation* (1988) 5th Cir. La.App., 525 So.2d 1182; *Reaux v. Our Lady of Lourdes Hospital* (1986) 3d Cir. La.App., 492 So.2d 233, *writ denied;*

*Head v. Erath General Hospital* (1984) 3d Cir. La.App., 458 So.2d 579, *writ denied; Zobac v. Southeastern Hospital District of Palm Beach County* (1980) 4th Dist. Fla.App., 382 So.2d 829; *St. Vincent's Medical Center v. Oakley* (1979) 1st Dist. Fla.App., 371 So.2d 590; *Brodie v. Gardner Pierce Nursing and Rest Home, Inc.* (1980) 9 Mass.App. 639, 403 N.E.2d 1184; *Nichols v. Wilson* (1983) 296 Md. 154, 460 A.2d 57.

Construction of the Act itself does not lead to Methodist's suggested interpretation. Defendant's suggestion that all patient-provider relationships are governed by the Act impacts upon important, countervailing policies. Issues which weigh in favor of the all-inclusiveness of the Act are those which led the General Assembly to enact such legislation: the desire to keep the doors to hospitals and doctors offices open. *See Johnson v. St. Vincent Hospital, Inc.* (1980) 273 Ind. 374, 404 N.E.2d 585; *Lomax, supra,* 465 N.E.2d 731.

■ Premises liability, however, derives from the common law. Our Medical Malpractice Act provides that:

"No action against a health care provider may be commenced in any court of this State before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this chapter and an opinion is rendered by the panel." I.C. 16–9.5–9–2 (Burns Code Ed.1983 and Supp.1989).

As such, it is in derogation of the common law and must be strictly construed. *Jones v. Griffith* (1988) N.D.Ind., 688 F.Supp. 446, *vacated on other grounds,* 870 F.2d 1363 (7th Cir.1989); *B.G.L. v. C.L.S.* (1977) 175 Ind.App. 132, 369 N.E.2d 1105, 1108. The above provision must be interpreted in terms of other relevant provisions of the Act. The medical review panel is empowered to "review all proposed *malpractice* complaints against health care providers covered by this article." (Emphasis supplied.) I.C. 16–9.5–9–1 (Burns Code Ed.

1983 and Supp.1989). Malpractice is defined as

"any tort or breach of contract based on health care or professional services rendered, or which should have been rendered by a health care provider, to a patient." I.C. 16–9.5–1–1(h) (Burns Code Ed.1983 and Supp.1989).

Healthcare is in turn defined as

"any act, or treatment performed or furnished, or which should have been performed or furnished, by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement." I.C. 16–9.5–1–1(i) (Burns Code Ed.1983 and Supp.1989).

Construing these sections as a whole, we cannot agree that the Malpractice Act is implicated every time a patient files a complaint alleging a patient-provider relationship.[4]

Furthermore, the method which was chosen by the General Assembly to effect its goal—establishment of a medical review panel—speaks to an interpretation that there are limits which necessarily exist with reference to the Act's inclusiveness. The medical review panel has the sole duty to render an expert opinion as to whether a provider acted within the appropriate standard of care. I.C. 16–9.5–9–7 (Burns Code Ed.1983). The panel is required to be comprised of three health care providers and to be chaired by an attorney. I.C. 16–9.5–9–3 (Burns Code Ed.1983 and Supp.1989). Only the providers are allowed to render an expert opinion.

■ This suggests an intent that the panel confine itself to matters of malpractice, where members of the medical profession are naturally qualified as experts. It suggests the reverse side of the coin as well: because they are not qualified as experts (as the term is legally defined) outside the healthcare arena, the panel, and the Malpractice Act by implication, are not equipped to deal with matters pertaining to ordinary negligence. *See Payne v. Marion General Hospital,* (1990) 2d Dist. Ind.App.,

---

4. Neither, however, do we intend to imply that a plaintiff may avoid the Act by merely alleging that the Hospital or doctor is the owner of the premises upon or in which the injury was sustained.

549 N.E.2d 1043; *Lomax, supra,* 465 N.E.2d at 751; *Emig v. Physicians Physical Therapy Service* (1982) 3d Dist. Ind. App., 432 N.E.2d 52; *Jones, supra,* 688 F.Supp. 446.[5]

To extend the reach of the Act beyond its intended scope would necessarily involve extending the scope of our function as a judicial body. Until the legislature says otherwise we cannot hold, as a matter of law, that the Act covers every patient-provider case. It has already been held that the Act was not intended to extend to cases of ordinary negligence or premises liability. *Lomax, supra,* 465 N.E.2d at 751. We adhere to that decision.

Because we cannot say, as a matter of law, that the case before us comes within the scope of Indiana's malpractice act, we hold that the trial court did not err in denying Methodist's motion to dismiss. This is not to say that during the course of discovery and litigation facts might not come to light which indicate that the case is within the Act.[6] Nevertheless, in the posture the case is presented to us the judgment should be and is hereby affirmed.

HOFFMAN and MILLER, JJ., concur.

---

**5.** We are mindful of comments by J. Garrard in his concurrence to *Guinn v. Light* (1989) 4th Dist. Ind.App., 536 N.E.2d 546, 549, *trans. pending:* "... the real function of the review panel is to provide an expert opinion ... Nevertheless, they are empowered to determine whether that opinion is called for since the Act provides for no other body to make that determination." The *Guinn* case called for a determination as to whether or not dentists were health care providers. We believe that the review panel's power to determine whether or not its expert opinion is needed has limits and those limits are reached when malpractice is not alleged.

**6.** We make no determination as to the appropriate course of action to be followed by a trial court which concludes during or after trial, but before judgment, that the claim is within the coverage of the Act.