**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



ATTORNEYS FOR APPELLANT:

**PATRICIA L. MARTIN**
Martin Law Offices, PC
Angola, Indiana

**MARYLYN K. L. ERNSBERGER**
Stout Law Group, PC
Angola, Indiana

ATTORNEY FOR APPELLEE:

**CHARLES W. MCNAGNY**
Fort Wayne, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KATHAY VAN DYNE,                               )
                                              )
    Appellant-Plaintiff,                      )
                                              )
        vs.                               )        No. 02A04-1211-CT-572
                                              )
IOM HEALTH SYSTEMS LP, d/b/a                   )
LUTHERAN HOSPITAL OF INDIANA,                  )
                                              )
    Appellee-Defendant.                       )

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Nancy Eshcoff Boyer, Judge
Cause No. 02D01-1103-CT-140

**July 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

In March 2009, Roger VanDyne, who suffered from Parkinson's disease, was a patient at IOM Health System, L.P., Lutheran Hospital of Indiana, d/b/a Lutheran Hospital of Indiana (Lutheran Hospital). During his stay, he spilled hot coffee on his lap, burning his leg and abdomen. Kathay VanDyne (VanDyne), Roger's wife, subsequently filed a complaint for damages on her own behalf and on behalf of her husband's estate against Lutheran Hospital, alleging negligence. Lutheran Hospital filed a motion for summary judgment. VanDyne appeals the granting of Lutheran Hospital's motion for summary judgment, presenting the following consolidated, restated issue for review: Did the trial court err in determining that this case should have been filed under the Indiana Medical Malpractice Act (MMA)?

We affirm.

The facts favorable to VanDyne, the non-moving party, are that on March 17, 2009, Roger was admitted as a patient to Lutheran Hospital's Generations Unit because he was experiencing confusion and irritability. Roger had a "significant history of Parkinsonism." *Transcript* at 107. The symptoms of this disease vary, including tremors and falling. In Roger's particular case, he did not suffer from tremors, at least not during his stay at Lutheran Hospital, but did have a history of falling. Between 9:00 and 11:40 a.m. the next day, March 18, Roger was in the Generations Unit's dining room, where he played cards, among other things. Sometime during the mid-morning, an unidentified staff member of Lutheran Hospital gave him a cup of coffee to drink. The cup was a plastic or Styrofoam, open-brim type of cup. Roger spilled the coffee on his lap, causing burns. Roger's medical

2

chart contained the following notation: "11:40 … Pt had hot coffee this a.m. [and] knocked it over into his lap [and] abdomen." *Appellant's Appendix* at 155. He was treated for burns to his left thigh and abdomen. Roger remained at the hospital until he was discharged on March 27, 2009. His burns had improved by the time he left the hospital. Roger died on August 22, 2009. There is no indication in the record that his burns were a causal factor in his death.

VanDyne opened an estate for the purpose of prosecuting a personal injury action on behalf of her late husband and her for personal injuries and loss of consortium, respectively. She filed that lawsuit on March 11, 2011, alleging under Count I that Roger had suffered personal injury because of Lutheran Hospital's negligence, and under Count II that as a result of Roger's injuries, she suffered a loss of his services, companionship, and consortium. On April 26, 2011, Lutheran Hospital filed an answer in which it asserted, among other things, the affirmative defense that this action is governed by the MMA and was subject to dismissal pursuant to its provisions.

On April 16, 2012, Lutheran Hospital submitted a motion for summary judgment contending that VanDyne's complaint was governed by the MMA, pursuant to which a proposed complaint must first be filed with the Indiana Department of Insurance before a lawsuit can be filed against the alleged tortfeasor. Lutheran Hospital argued that VanDyne failed to comply with the MMA in that regard, and that the statute of limitations for doing so had expired. Therefore, Lutheran Hospital contended, the action should be dismissed. VanDyne opposed summary judgment before the trial court upon the same ground she asserts on appeal in challenging the trial court's ruling, i.e., that her complaint did not allege medical

malpractice and therefore was not governed by, nor subject to the requirements of, the MMA. VanDyne appeals the grant of summary judgment in favor or Lutheran Hospital.

Summary judgment is appropriate where the moving party shows there are no genuine issues of material fact with respect to a particular issue or claim. Ind. Trial Rule 56(C); *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574 (Ind. 2013). We review a summary judgment order *de novo*. *Walczak v. Labor Works-Ft. Wayne LLC*, 983 N.E.2d 1146 (Ind. 2013). Considering only the facts supported by evidence designated to the trial court by the parties, we must determine whether there is a "genuine issue as to any material fact" and whether "the moving party is entitled to a judgment as a matter of law." T.R. 56(C); *see also Kovach v. Caligor Midwest*, 913 N.E.2d 193 (Ind. 2009). Where the moving party designates material demonstrating there are no genuine issues of material fact with respect to a particular issue or claim, the burden shifts to the non-moving party to come forward with designated evidence showing the existence of a genuine issue of material fact. *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983 N.E.2d 574. Upon review, we will accept as true those facts alleged by the nonmoving party. *Sees v. Bank One, Ind., N.A.*, 839 N.E.2d 154 (Ind. 2005). Moreover, we construe all factual inferences in favor of the nonmoving party and resolve all doubts as to the existence of a material issue against the moving party. *Kovach v. Caligor Midwest*, 913 N.E.2d 193. The appellant bears the burden of demonstrating that the grant of summary judgment was erroneous. *Williams v. Tharp,* 914 N.E.2d 756 (Ind. 2009). We will affirm a grant of summary judgment on any theory supported by the record. *Holiday Hospitality Franchising, Inc. v. AMCO Ins. Co.*, 983

4

N.E.2d 574. Finally, the issue presented in this case is whether VanDyne's complaint falls within the general scope of the MMA. This is a question of statutory interpretation, which we review under a *de novo* standard. *Elliott v. Rush Mem'l Hosp.,* 928 N.E.2d 634 (Ind. Ct. App. 2010), *trans. denied.*

Our courts have interpreted the MMA to cover "curative or salutary conduct of a health care provider acting within his or her professional capacity," *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182, 185 (Ind. 2011) (quoting *Murphy v. Mortell,* 684 N.E.2d 1185, 1188 (Ind. Ct. App. 1997), *trans. denied*), but not conduct "unrelated to the promotion of a patient's health or the provider's exercise of professional expertise, skill, or judgment." *Id*. (quoting *Collins v. Thakkar,* 552 N.E.2d 507, 510 (Ind. Ct. App. 1990), *trans. denied*). In determining whether the MMA is applicable, we examine the substance of a claim. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182. The label that a plaintiff attaches is not determinative; instead the determination ultimately is reduced to the "question of whether a given course of treatment was medically proper and within the appropriate standard[.]" *Id*. at 185 (quoting *Van Sice v. Sentany*, 595 N.E.2d 264, 267 (Ind. Ct. App. 1992)). On the other hand, a health-care provider's actions that are demonstrably unrelated to the promotion of the plaintiff's health or an exercise of the provider's professional expertise, skill, or judgment fall outside the MMA. *Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182.

Under the MMA, "health care" is defined as "an act or treatment performed or furnished, or that should have been performed or furnished, by a health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Ind.

Code Ann. § 34-18-2-13 (West, Westlaw current through P.L.76 with effective dates through April 15, 2013). In essence, VanDyne contends that the act of providing Roger with a cup of hot coffee did not constitute medical care or treatment within the meaning of the MMA. VanDyne analogizes the allegation of negligence in the present case to one in which a lamp fell on a patient during or shortly before a surgical procedure, *see Pluard v. Patients Compensation Fund*, 705 N.E.2d 1035 (Ind. Ct. App. 1999), *trans. denied*, or where a physical therapy patient tripped on a floorboard protruding above the floor on her way to a pool for therapy. *See Winona Mem'l Found. of Indianapolis v. Lomax*, 465 N.E.2d 731 (Ind. Ct. App. 1984). Both cases involved claims of premises liability, albeit involving incidents that occurred in medical facilities and during the course of medical treatment. In each case, this court concluded that the complained-of act did not constitute medical treatment and thus the action did not implicate the MMA. For reasons explained below, however, we find those cases inapposite.

The present lawsuit is based upon Lutheran Hospital's decision to provide Roger with a cup of hot coffee to drink and the appropriateness for Roger in particular of the cup in which it was served. The specific allegation of negligence, and the gravamen of the lawsuit, is reflected in paragraph 5 of the complaint for damages, as follows: "The Staff Member recklessly, with knowledge of Mr. VanDyne's medical and physical condition, provided him with a cup or container that was inadequate for him to hold without spilling the hot coffee on his body." *Appellant's Appendix* at 9. Unlike *Pluard* and *Lomax*, the gravamen of VanDyne's complaint is not premised upon a faulty or dangerous condition of the premises

6

or an act that occurred therein. Indeed, in the strictest sense of the term, it is not premised upon an act at all. Rather, it centers upon a *decision* – the decision to give Roger hot coffee in an open cup. VanDyne alleged that this decision was negligent precisely because of Roger's "medical and physical condition." *Id*. Can this decision be characterized as related to the promotion of Roger's health or an exercise of the Lutheran Hospital's professional expertise, skill, or judgment? *See Howard Reg'l Health Sys. v. Gordon*, 952 N.E.2d 182.

In answering an interrogatory asking VanDyne to describe in detail the contention "that the treatment and care provided by the defendant did not meet the applicable standard of care," VanDyne responded:

> The fact that he had severe burns on his thigh is proof of very bad care, and he suffered. In the daily progress note dated 03/18/2009 Dr. Schneider noted Plaintiff spilled coffee in his lap and that "we will try to avoid further mishaps." Also, in the same progress report it is mentioned that Roger had been diagnosed with Parkinson's disease. *A hot cup of coffee should not be handed to a patient with Parkinson's disease*.

*Appellant's Appendix* at 26 (emphasis supplied).[1] This response clearly conveys the allegation that the decision to give Roger hot coffee in a cup did not conform to the standard of care appropriate for a person with Parkinson's disease. In support of its summary judgment motion, Lutheran Hospital submitted the affidavit of VonDella Falls, an R.N. who

---

[1] The highlighted assertion no doubt refers to one of "the common symptoms of [Parkinson's that is] within the knowledge and experience of lay people" to which our colleague in dissent refers – i.e., uncontrollable tremors. *Slip op*. at 2 (Robb, C.J., dissenting). In point of fact, however, Lutheran Hospital designated evidence that Roger's Parkinson's symptoms did *not* include tremors, and that such contributed to the decision of its medical staff that an open cup was a suitable container to give to Roger for the purpose of drinking coffee. Thus, we think this complaint for damages cannot be fairly characterized as premised merely upon "[g]iving a patient a cup of coffee." *Id*. Rather, it was premised upon the decision by hospital medical staff to provide this particular patient, in light of his particular medical condition, with a hot drink in an open cup.

7

was the manager of the Generations Unit on the day Roger was injured. Falls stated in the affidavit that unless restricted by a physician, patients in the Generations Unit were typically served coffee. Further, she stated, "[t]he issue of whether coffee should be provided to the patient in a cup with an open top or in a sippy cup involves questions of nursing judgment, and such assessments are properly made by the involved nursing staff, and the techs who work under them and pursuant to their direction." *Appellant's Appendix* at 29.

We reiterate that the gravamen of VanDyne's complaint is the decision to give hot coffee in an open cup to Roger. VanDyne alleged that decision was faulty in light of Roger's condition. Fall's affidavit clarified that the criteria for making that decision one way or the other involved a professional judgment concerning Roger's capabilities following a medical assessment of his mental and physical condition. This is a clear example of the "exercise of professional expertise" within the meaning of *Howard Reg'l Health Sys. V. Gordon*, 952 N.E.2d at 185 (quoting *Collins v. Thakkar*, 552 N.E.2d at 510). Accordingly, as written, the complaint places at issue the appropriateness of Lutheran Hospital's exercise of professional medical judgment, and is governed by the MMA. VanDyne failed to file a proposed complaint with the Indiana Department of Insurance within the time prescribed by the MMA. Therefore, the trial court did not err in granting summary judgment in Lutheran Hospital's favor.

Finally, we note that VanDyne has designated a second, discrete issue that does not implicate the nature of the container in which the coffee was served to Roger. Rather, it implicates the temperature of the coffee that was served to him. VanDyne's appellate brief

8

does not devote much space to this issue, and the gist of this argument is best reflected in the relevant portion of the "Summary of Argument" section of VanDyne's brief, i.e.: "As a result of the disputed origin of the coffee, a factual dispute arises regarding the temperature of the coffee. And as a result of the disputed temperature, and the severity of Mr. VanDyne's burn, there are genuine issues of material fact related to Plaintiff's claim of ordinary negligence." *Appellant's Brief* at 4.

It seems to us that this issue is addressed to the appropriateness of summary judgment entirely apart from the question of whether this is a medical malpractice action. In fact, it appears to *presume* our conclusion that this case sounds in ordinary negligence. For instance, VanDyne provides no discussion or citation to authority relevant to the situation in which a complaint for damages contains several discrete claims, some of which allege medical malpractice and some of which allege ordinary negligence. More to the point, VanDyne has not provided authority for the proposition that separate claims of ordinary negligence in such a complaint would survive dismissal of the complaint on grounds that the plaintiff failed to satisfy the procedural requirements of the MMA in pursuing the medical malpractice claims.

We think it a stretch to read into VanDyne's complaint an allegation that the coffee itself was too hot. The sole paragraph in the complaint that articulates the specific allegation of negligence addresses only the appropriateness of the cup in which the coffee was served, i.e.: Lutheran Hospital "recklessly, with knowledge of Mr. VanDyne's medical and physical condition, provided him with a cup or container that was inadequate for him to hold without spilling the hot coffee on his body." *Appellant's Appendix* at 9. We reiterate, however, that

9

even if the issue were deemed as fairly presented, VanDyne has not provided authority for the proposition that we may, to borrow a term from contract law, merely blue-pencil out the medical malpractice allegation and let all others stand. The trial court did not err in granting summary judgment in Lutheran Hospital's favor.

Judgment affirmed.

CRONE, J., concurs.

ROBB, C.J., dissents in a separate opinion.

IN THE
COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| KATHAY VAN DYNE, | ) | |
| | ) | |
| Appellant-Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 02A04-1211-CT-572 |
| | ) | |
| IOM HEALTH SYSTEMS LP, d/b/a/ | ) | |
| LUTHERAN HOSPITAL OF INDIANA, | ) | |
| | ) | |
| Appellee-Defendant. | ) | |

**ROBB, Chief Judge, dissenting**

Because I do not believe this case needed to be filed under the Indiana Medical Malpractice Act, I respectfully dissent from the majority's opinion affirming the trial court.

I believe the majority's characterization of VanDyne's complaint as premised on a "decision" that brings the complaint within the Act is an overly broad interpretation both of the allegations and the scope of the Act. Our courts have consistently held that not every negligent act or omission by a health care provider constitutes medical malpractice. See, e.g., Methodist Hosp. of Indiana, Inc. v. Ray, 558 N.E.2d 829, 829 (Ind. 1990) (adopting Methodist Hosp. of Indiana, Inc. v. Ray, 551 N.E.2d 463, 469 (Ind. Ct. App. 1990) (noting that the "Act was not intended to extend to cases of ordinary negligence or premises

liability.")). That the negligent conduct took place in a health care facility is not determinative. See Pluard v. Patient's Compensation Fund, 705 N.E.2d 1035, 1037 (Ind. Ct. App. 1999) ("The fact that conduct occurs in a health care facility cannot, by itself, transmute the conduct into the rendition of health care or professional services."), trans. denied; see also Collins v. Thakkar, 552 N.E.2d 507, 511 (Ind. Ct. App. 1990) ("The acts as alleged, although plainly occurring during the rendition of health care, were not designed to promote the patient's health. Neither do they call into question [the doctor's] use of the skill and expertise required of members of the medical profession."), trans. denied. The crux of a medical malpractice action is whether the actions complained of were "undertaken in the interest of or for the benefit of the patient's health . . . . Acts or practices committed with something other than such a remedial purpose would again be excluded [from the Act] by implication." Collins, 552 N.E.2d at 510.

Giving a patient a cup of coffee does not seem to me to be an action undertaken in the interest of or for the benefit of the patient's health. It is neither diagnosis nor medical care and treatment. Determining whether a person with Parkinson's Disease – the common symptoms of which are within the knowledge and experience of lay people – should be given a hot cup of coffee in an open cup requires no professional skill or expertise. A medical review panel's expert opinion on whether the act in question is within the appropriate standard of care is therefore unnecessary. This is especially true when the particular patient in question does not demonstrate tremors – the most recognizable symptom of Parkinson's Disease and the one most likely to result in problems from an open cup of hot coffee. See

12

slip op. at 7 n.1.  I believe this is a claim of "ordinary" negligence that just happened to occur in a medical setting, and to hold otherwise risks expanding the scope of the Act toward the "absurd results" referenced in <u>Lomax</u> and acknowledged in <u>Pluard</u>.  <u>Lomax</u>, 465 N.E.2d at 734-35 (describing examples offered by the patient of claims that would be subject to the Act if the Act were construed to apply to every claim by a patient against a qualified health care provider); <u>Pluard</u>, 705 N.E.2d at 1037 (noting that the facts therein were akin to one of the examples posited by the patient in <u>Lomax</u>).  I would reverse the trial court's grant of summary judgment for Lutheran Hospital on the issue of whether VanDyne's claims fell under the Act, and accordingly, I dissent.