## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 03 2016, 6:18 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Dylan A. Vigh
Law Offices of Dylan A. Vigh, LLC
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
James D. Boyer
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of J.M. and P.M. (Minor Children), Children in Need of Services,

and

V.M. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

June 3, 2016

Court of Appeals Case No.
49A02-1510-JC-1763

Appeal from the Marion Superior Court

The Honorable Marilyn A. Moores, Judge

Trial Court Cause Nos.
49D09-1505-JC-1486, -1487

**Crone, Judge.**

# Case Summary

V.M. ("Father") appeals a trial court adjudication designating his children J.M. and P.M. (collectively "the Children") as children in need of services ("CHINS"). Finding the evidence sufficient to support the CHINS designation, we affirm.

# Facts and Procedural History

In 2012, Father and A.M. ("Mother") dissolved their marriage. Pursuant to the dissolution decree, they had joint custody of their daughter J.M. (born April 21, 2006) and son P.M. (born March 21, 2008), with the Children together alternating between the parents on a weekly basis.

In April 2015, the Department of Child Services ("DCS") investigated a report that Father had inappropriately touched the Children and that there was a history of domestic violence in the home. Seven-year-old P.M. told a DCS case manager that Father had touched him "on the inside of his butt," and it made him feel "uncomfortable and sad." Appellant's App. at 37-39. A few days later, the Children underwent forensic interviews, during which P.M. disclosed that Father had touched him inside his buttocks while he and J.M. were lying on a bed watching a movie. J.M. reported that she did not see Father touch P.M.'s buttocks but that P.M. had told her about it. P.M. also reported that Father had touched his penis while giving him an oil massage.

[4]     In May 2015, DCS filed a CHINS petition, alleging that Father had touched P.M. inside his buttocks and had touched his penis during an oil massage; that Father had bitten J.M. on her cheek and kissed her lips; that Father's new wife had given J.M. an oil massage while J.M. was naked; and that Father had a history of abuse and control over Mother. The trial court reviewed the petition, removed the Children from each parent's care, and granted temporary wardship to DCS.

[5]     At a child hearsay hearing in July 2015, Mother admitted to the CHINS allegations based on the Children's exposure to Father's acts of domestic violence, the reports of his inappropriate touching, and her inability to protect the Children due to Father's unsupervised parenting time. She agreed to participate in home-based services, therapy, and a domestic violence assessment. Father requested that the trial court admit the forensic interviews of the Children and render its decision based on that evidence in lieu of a contested factfinding hearing. The trial court admitted the forensic interviews and indicated that it would render its decision based on those interviews and Mother's admissions. Father did not request the admission of additional evidence.

[6]     In July 2015, the trial court issued an order designating the Children as CHINS. The court held a hearing and issued a dispositional order placing the Children with Mother, giving Father supervised parenting time, and ordering both parents to participate in home-based therapy.

[7] On August 26, 2015, Father filed a motion to correct error as to the trial court's CHINS designation, asserting that the trial court erred in ruling primarily on the forensic interviews and in failing to consider additional information that was not part of the hearing record. He attached to his motion an opinion letter from a clinical psychologist and copies of DCS reports not previously in the hearing records. Father's motion to correct error was deemed denied pursuant to Indiana Trial Rule 53.3(A). He now appeals the CHINS designation.[1] Additional facts will be provided as necessary.

## Discussion and Decision

[8] Father challenges the sufficiency of evidence to support the CHINS determination. When reviewing the sufficiency of evidence, we give due regard to the trial court's ability to assess the credibility of witnesses. *In re Des.B.*, 2 N.E.3d 828, 836 (Ind. Ct. App. 2014). We neither reweigh evidence nor judge witness credibility; rather, we consider only the evidence and reasonable inferences most favorable to the trial court's decision. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). Where, as here, the trial court sua sponte issues findings of fact and conclusions thereon, we apply a clearly erroneous standard for matters covered by the trial court's findings. *In re S.D.*, 2 N.E.3d 1283, 1287 (Ind. 2014). In so doing, we apply a two-tiered standard of review, considering first whether the evidence supports the findings and then whether the findings

---

[1] Mother admitted to the CHINS designation and is not participating in this appeal.

support the judgment. *Id.* As for matters not covered in the findings, we apply a general judgment standard, pursuant to which a judgment "will be affirmed if it can be sustained on any legal theory supported by the evidence." *Id.*

[9] In a CHINS proceeding, the State bears the burden of proving by a preponderance of the evidence that a child meets the statutory definition of a CHINS. *In re N.E.*, 919 N.E.2d 102, 105 (Ind. 2010). To meet its burden of establishing CHINS status, the State must prove that the child is under age eighteen,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

Ind. Code § 31-34-1-1.

[10] A CHINS designation focuses on the condition of the child rather than on an act or omission by the parent. *N.E.*, 919 N.E.2d at 105. Whereas the acts or omissions of one parent can cause a condition that creates the need for court intervention,

> [a] CHINS adjudication can also come about through no wrongdoing on the part of either parent, e.g., where a child

substantially endangers the child's own health or the health of another individual; or when a child is adjudicated a CHINS because the parents lack the financial ability to meet the child's extraordinary medical needs. While we acknowledge a certain implication of parental fault in many CHINS adjudications, the truth of the matter is that a CHINS adjudication is simply that— a determination that a child is in need of services.

*Id.* (citations omitted). A trial court need not wait until a tragedy occurs to intervene. *In re A.H.*, 913 N.E.2d 303, 311 (Ind. Ct. App. 2009).

[11] Here, Father has not specifically challenged any of the trial court's findings but instead makes general denials of inappropriate conduct and general assertions concerning the strength of the evidence and inferences drawn from the forensic interviews. The trial court's findings include the following:[2]

4. Father maintained his denial of the allegations but stipulated to the authenticity and admissibility of the video of his children's forensic interviews regarding some of the allegations.

5. And the Court having reviewed the video and being duly advised in the premises thereof, now finds:

6. Father inappropriately touched the inside of P.M.'s buttocks and it felt "bad" to the child.

---

[2] To the extent that the findings include proper names for Mother, Father, J.M., and P.M., we have removed those designations.

7. Father touched his son P.M. in an inappropriate and sexual manner while giving him an oil massage.

8. Father's wife … gave J.M. an oil massage while [J.M.] was naked.

9. P.M. did not seem coached in any way during the video. On the contrary, the child provided details that would have been very difficult for a child his age to remember, if he were lying and made time errors that are also very common among children his age when they are telling the truth.

10. P.M. came across as very natural, forthright, embarrassed, troubled and … confused by his father's and his wife's actions.

11. J.M., a teenager made no disclosures during her forensic interview, but apparently made disclosures once she was reunited with her mother.

….

13. Accordingly, the Court finds that the children's physical and mental conditions are seriously impaired and seriously endangered as a result of the Father's commission of sexual abuse against at least P.M. and that Mother is unable to protect the children while they are in Father's care because he has unsupervised parenting time under the terms of their divorce.

Appellant's App. at 5.

[12] Interestingly, after stipulating to the trial court basing its ruling on the forensic interviews in lieu of a factfinding hearing, Father now argues that the trial court accorded too much weight to those interviews. As support, he relies on

documents attached to his motion to correct error. These documents – an opinion letter from a child psychologist and several DCS reports – were not part of the record when the trial court ruled on the CHINS petition. "[Indiana Trial] Rule 59(H)(1) requires a motion to correct error that is based on evidence outside the record to be 'supported by affidavits showing the truth of the grounds set out in the motion.'" *Stoffel v. JPMorgan Chase Bank, N.A.*, 3 N.E.3d 548, 554 (Ind. Ct. App. 2014). Father could have submitted these documents before or during the factfinding hearing, but instead, he stipulated to a procedure that dispensed with the factfinding hearing altogether. *See Mid-States Aircraft Engines, Inc. v. Mize Co.*, 467 N.E.2d 1242, 1245 (Ind. Ct. App. 1984) ("T.R. 59(H)(1) affidavits may not be used to present evidence the party neglected to offer during the proceeding."). Even so, the documents that Father attached to his motion to correct error do not comply with Trial Rule 59(H)(1) because they are not themselves affidavits, nor were they accompanied by affidavits.[3] As such, they are not properly considerable under the Rule.

[13] Simply put, Father's arguments amount to an invitation to reweigh evidence and assess witness credibility, which we may not do. Having agreed to the abbreviated procedure and then disagreed with the trial court's decision, Father

---

[3] One of the documents is an opinion letter from child psychologist Dr. Steven J. Couvillion. Although it is titled, "Affidavit," it is clearly an expert opinion provided for purposes of litigation. Appellant's App. at 50-54. It does not contain a signed verification, under penalty of perjury, of the truth of matters asserted therein and therefore does not satisfy the requirements of an affidavit. Ind. Trial Rule 11(B). Similarly, the attached DCS reports of other unsubstantiated neglect and abuse allegations against Father are not accompanied by affidavits and thus do not comply with Trial Rule 59(H)(1).

attempted to bolster his position by attaching unverified documents to his motion to correct error. The unchallenged findings support the CHINS designation. The Children were seriously impaired or endangered by Father's conduct[4] and Mother's inability to supervise them while they were with Father. Being subject to the dissolution court's joint custody order, Mother could not legally deny Father his parenting time. As such, absent the coercive intervention of the trial court, it is unlikely that the Children would have received much-needed care and treatment. Based on the foregoing, we conclude that the trial court did not clearly err in designating the Children CHINS. Accordingly, we affirm.

[14] Affirmed.

Najam, J., and Robb, J., concur.

---

[4] Father cites as support for his insufficiency claim the State's decision not to bring criminal charges against him. We remind him that a determination of criminal liability requires a more rigorous standard of proof than a CHINS designation.