# FOR PUBLICATION



FILED
Jan 09 2014, 6:43 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**BRUCE D. HUNTINGTON**
Botkin & Hall, LLP
South Bend, Indiana

ATTORNEY FOR APPELLEE:

**MARK D. GERTH**
**MICHAEL E. BROWN**
Kightlinger & Gray, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| WOLF'S MARINE, INC., | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 29A02-1303-SC-293 |
| | ) | |
| DEV BRAR, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE HAMILTON SUPERIOR COURT
The Honorable Wayne A. Sturtevant, Judge
Cause No. 29D05-1212-SC-12617

**January 9, 2014**

**OPINION - FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Wolf's Marine, Inc. ("Wolf's"), appeals the trial court's denial of its motion to dismiss a complaint filed by Dr. Dev Brar. We reverse.

**Issue**

The sole issue before us is whether an Indiana court can exercise personal jurisdiction over Wolf's.

**Facts**

Dr. Brar is a resident of Carmel in Hamilton County, Indiana. Wolf's is a business located in Berrien County, Michigan, that among other things offers seasonal storage space for boats and boating equipment. Wolf's has a website claiming it is the "Midwest's Largest Marine Accessory Store" and it also might advertise in Indiana phone books.[1] Appellee's App. p. 7. Wolf's has no physical facilities or employees in Indiana.

Dr. Brar owned a boat that was docked in Chicago, Illinois, from May to October. In 2010, Dr. Brar asked his personal agent, Thomas Leonard, to find a place to store the boat for the upcoming winter. Leonard was referred to Wolf's by an acquaintance he knew in Chicago. Leonard then initiated contact with Wolf's, who in turn emailed a rental contract to Leonard in Carmel at Leonard's request. Leonard signed and returned the contract to Wolf's. There was no forum selection provision in the contract. Leonard then piloted Dr. Brar's boat across Lake Michigan from Chicago to Wolf's dock in Benton

---

[1] Leonard claimed in an affidavit provided to the trial court that Wolf's "solicited business from Indiana residents via the Yellow Pages" and claimed to attach a copy of such "advertisement" to his affidavit. Appellee's App. p. 5. The attachment referred to, however, is simply an Internet listing for Wolf's from the Yellowpages.com website based upon a search for "Wolfs Marine Inc near South Bend, IN." Id. at 8. This does not indicate that Wolf's placed actual ad listings in physical Indiana phone books.

Harbor, Michigan, and Wolf's stored the boat at its facility. Leonard took the boat back to Chicago in May 2011. Wolf's sent a bill for its services to Leonard in Carmel, and Leonard arranged for payment to Wolf's accordingly.

Leonard again contracted with Wolf's to store Dr. Brar's boat for the 2011-2012 winter season, following the same procedure as in 2010-11. Leonard asserts that when he left the boat at Wolf's harbor in October 2011, it was completely undamaged. However, Leonard claims that when he retrieved the boat in May 2012, the bow was damaged.

Dr. Brar filed a small claims complaint against Wolf's in Hamilton County, alleging damages to his boat in the amount of $6000. Wolf's owner subsequently wrote a letter to the trial court stating, "I feel that if a claim is to be filed, it should be filed in Berrien County, Michigan." Appellant's App. p. 12. The trial court ordered Dr. Brar to respond to this letter. After Dr. Brar responded in writing, the trial court found it had personal jurisdiction over Wolf's. Wolf's then obtained counsel, and it filed a motion to dismiss for lack of personal jurisdiction. Without conducting a hearing, the trial court denied the motion. Wolf's obtained permission from the trial court and this court to pursue an interlocutory appeal from this denial.

### Analysis

The existence of personal jurisdiction is a question of law we review de novo. LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 965 (Ind. 2006). "We do not defer to the trial court's legal conclusion as to whether personal jurisdiction exists." Id. Whether personal jurisdiction exists turns on facts, namely the extent of a defendant's contacts with the forum, and ordinarily a trial court's factual findings on that point would be reviewed

3

for clear error.  Id.  Here, however, the trial court did not conduct any hearings regarding personal jurisdiction and instead ruled entirely on paper records submitted by the parties. In such a case, "we are in as good a position as the trial court to determine the existence of jurisdictional facts and will employ de novo review as to those facts."  Munster v. Groce, 829 N.E.2d 52, 57 (Ind. Ct. App. 2005).

The existence of personal jurisdiction over a defendant is a constitutional requirement for entering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  Id.  Also, Indiana's "long-arm" rule for exercising personal jurisdiction over out-of-state defendants, Indiana Trial Rule 4.4(A), permits the exercise of personal jurisdiction in any manner consistent with the Due Process Clause.  LinkAmerica, 857 N.E.2d at 967.  When a defendant challenges the existence of personal jurisdiction, the plaintiff must present evidence of the court's personal jurisdiction over the defendant.  Norris v. Personal Finance, 957 N.E.2d 1002, 1007 (Ind. Ct. App. 2011).  The defendant, however, bears the ultimate burden of proving lack of personal jurisdiction by a preponderance of the evidence, unless such lack is apparent on the face of the complaint.  Id.

In assessing whether the exercise of personal jurisdiction over a defendant would violate the Due Process Clause, "a person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  Brockman v. Kravic, 779 N.E.2d 1250, 1256 (Ind. Ct. App. 2002) (citing International Shoe Co. v. Washington, 326 U.S. 310, 66 S. Ct. 154 (1945)).  Also, a defendant's contacts must "consist of some action by which the defendant purposefully

4

avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." Id. (citing Hanson v. Denckla, 357 U.S. 235, 78 S. Ct. 1228 (1958)). "Only the purposeful acts of the defendant, not the acts of the plaintiff or any third parties, satisfy this requirement." Id.

Under these principles, courts must first "look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being haled into court there." Id. "Contacts are any acts physically performed in the forum state or acts performed outside the forum state that have an effect within the forum." Id. When evaluating a defendant's contacts with a forum state, courts should assess: (1) whether the plaintiff's claim arises from the defendant's forum contacts; (2) the overall contacts of the defendant or its agent with the forum state; (3) the foreseeability of being haled into court in that state; (4) who initiated the contacts; and (5) whether the defendant expected or encouraged contacts with the state. Id. at 1257.

If sufficient contacts exist, courts must then "evaluate whether the exercise of personal jurisdiction offends traditional notions of fair play and substantial justice by weighing a variety of interests." Id. at 1256. The various interests to consider and weigh include: (1) the burden on the defendant of litigating in the forum state; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. Id. at 1257. "The fairness inquiry is

5

separate from the contacts question and may be used to defeat jurisdiction even if the defendant has sufficient contacts with the forum state." Id.

In addition to these general principles, a defendant's contacts with a state may give rise to either general or specific personal jurisdiction. As we explained in Brockman:

> General personal jurisdiction refers to the ability to be sued for any claim in a state. In order to establish general personal jurisdiction, the court must find continuous and systematic contacts with the forum state such that the defendant could reasonably foresee being haled into court in that state for any matter. General personal jurisdiction may exist if the contacts are substantial, continuous, and systematic. The contacts required for general personal jurisdiction are greater than those needed to establish specific personal jurisdiction.
>
> Specific personal jurisdiction is jurisdiction that stems from the defendant's having certain minimum contacts with the forum state so that the court may hear a case whose issues arise from those minimum contacts. Under this theory, the defendant's isolated contacts with a state that are not enough to establish general personal jurisdiction may be sufficient to allow jurisdiction over any incidents related to those contacts. A single contact with a forum state may be enough to establish specific personal jurisdiction if it creates a substantial connection with the forum state and the suit is based on that connection. However, the act must be purposeful, not random or attenuated or the unilateral activity of another party or a third person.

Id. at 1256-57 (citations omitted).

Dr. Brar's sole argument on appeal is that Wolf's had sufficient contacts with Indiana to establish specific personal jurisdiction in this case; he does not argue that Wolf's had such substantial, systematic, and continuous contacts with Indiana to establish general personal jurisdiction. In particular, Dr. Brar contends that this court has on several

6

occasions held that a decision by an out-of-state defendant "to enter into a contract with an Indiana resident was sufficient to allow Indiana to exercise personal jurisdiction over that defendant." Appellee's Br. p. 9. For this proposition Dr. Brar cites Attaway v. Omega, 903 N.E.2d 73 (Ind. Ct. App. 2009), Mid-States Aircraft Engines, Inc. v. Mize Co., Inc., 467 N.E.2d 1242 (Ind. Ct. App. 1984), and Woodmar Coin Center, Inc. v. Owen, 447 N.E.2d 618 (Ind. Ct. App. 1983).

The United States Supreme Court, however, has unequivocally held, "If the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478, 105 S. Ct. 2174, 2185 (1985). Personal jurisdiction does not turn on "mechanical" tests, including where a contract was entered into or was to be performed. Id. Instead, when determining whether a contract should give rise to personal jurisdiction in a plaintiff's state, courts should consider facts such as "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . ." Id. at 479, 105 S. Ct. at 2185. In Burger King, the Court held that a defendant located in Michigan who entered into a franchise agreement with the Burger King fast food chain, whose headquarters were located in Florida, could be sued in Florida for breach of the franchise agreement. Although the defendant had never set foot in Florida, he had deliberately sought to enter into a "carefully structured" twenty-year franchise agreement with a nationwide company based in Florida, which would require "continuing and wide-reaching contacts with Burger King in Florida," including regulation of the franchise from

7

Florida. Id. at 479-80, 105 S. Ct. at 2186. Under these circumstances, the Court held that personal jurisdiction over the defendant existed in Florida. Id.

We are not convinced that either Mid-States or Woodmar can be read for the simple proposition that Dr. Brar proposes, namely that merely entering into a contract with an Indiana resident subjects an out-of-state defendant to suit in Indiana. Even if those cases did so hold, they were decided before Burger King clearly held to the contrary. As for Attaway, that case involved a suit filed against Idaho residents who purchased a car located in Indiana in response to an eBay listing posted by Indiana residents, hired an agent to pick up the car in Indiana and deliver it to Idaho, and then rescinded payment for the car. We ultimately held it was proper "to exercise personal jurisdiction over individuals who have entered into a contract with an Indiana resident for the purchase of property located in Indiana, have removed that property from the state of Indiana, and then rescinded payment." Attaway, 903 N.E.2d at 79. Thus, in Attaway, there was significantly more contact than merely entering into a contract with an Indiana resident as a basis for personal jurisdiction to exist in that case.

Here, by contrast, no property located within Indiana was the subject of the contract between Wolf's and Dr. Brar. There also was no long-term and complicated entanglement between the parties, nor was Wolf's attempting to associate itself with an out-of-state "brand," as was the case in Burger King. Leonard did make payment to Wolf's from Indiana, but making payment to an out-of-state defendant from a bank account located in the forum state generally is insufficient to permit the exercise of personal jurisdiction over the defendant. See JPMorgan Chase Bank, N.A. v. Desert Palace, Inc., 882 N.E.2d 743,

8

751 (Ind. Ct. App. 2008) (citing <u>Helicopteros Nacionales de Colombia, S.A. v. Hall</u>, 466 U.S. 408, 416, 104 S. Ct. 1868, 1873 (1984)), <u>trans. denied</u>.

In fact, because this case does not concern the sale of property or the transfer of property to or from Indiana, we believe that cases addressing the use of the Internet or other media to advertise the sale of products to be shipped between states, such as <u>Attaway</u>, provide little guidance here. Also, although Wolf's has a website describing its services that is accessible in Indiana, it is primarily a form of nation- or region-wide advertising that, by itself, is not enough to establish personal jurisdiction over Wolf's in Indiana. "If the defendant merely operates a website, even a 'highly interactive' website, that is accessible from, but does not target, the forum state, then the defendant may not be haled into court in that state without offending the Constitution." <u>be2 LLC v. Ivanov</u>, 642 F.3d 555, 559 (7th Cir. 2011). Although Wolf's website boasts that it is the "Midwest's Largest Marine Accessory Store," that does not mean that it specifically targeted Indiana residents as opposed to residents throughout the undefined "Midwest" region. Appellee's App. p. 7. As for Wolf's possible advertising in Indiana Yellow Pages, it does not appear to have any relevance to a specific jurisdiction analysis because Dr. Brar is not making any claim that any such advertising was false or misleading; moreover, Leonard learned of Wolf's through an acquaintance in Chicago, not through Wolf's advertising or Yellow Pages listing. <u>See</u> <u>J.A. Riggs Tractor Co. v. Bentley</u>, 209 S.W.3d 322, 332 (Tex. App. 2006) (holding fact that Arkansas company marketed itself in Texas phone books was irrelevant to jurisdictional analysis where there was no evidence such marketing was related to contested sale of product).

9

Instead, this case is more similar to ones in which a hotel or other attraction advertises its services to residents in other states, a person decides to visit that hotel or attraction, he or she sustains injury at the hotel or attraction, and then attempts to sue the hotel or attraction in his or her home state. In Brokemond v. Marshall Field & Co., 612 N.E.2d 143 (Ind. Ct. App. 1993), an Indiana resident allegedly was injured after ingesting bits of glass in a salad bought at a Marshall Field's store restaurant in Calumet City, Illinois. The Indiana resident sued Marshall Field's in Indiana, claiming, among other things, that it advertised extensively to Indiana residents, delivered merchandise into Indiana, and that Calumet City was in close proximity to Indiana. This court held that Indiana did not have personal jurisdiction over Marshall Field's with respect to the Indiana resident's claim, concluding in part that Illinois had "a greater interest in determining if food served within its boundaries is reasonably safe for consumption." Brokemond, 612 N.E.2d at 146. Similarly, in Szakacs v. Anheuser-Busch Companies, Inc., 644 F. Supp. 1121, 1125 (N.D. Ind. 1986), the court held that Indiana could not exercise personal jurisdiction over an amusement park located in Florida with respect to an Indiana resident allegedly injured at the park, merely because of the park's nationwide advertising campaign encouraging people to visit the park.

Here, similar to Brokemond and Szakacs, Wolf's has advertised its services throughout the region, but its services are provided exclusively in Michigan, and the alleged breach of contract or negligence that caused damage to Dr. Brar's boat occurred exclusively in Michigan. This case is slightly different than Brokemond and Szakacs, in that Leonard did execute a contract on Dr. Brar's behalf in Indiana. We believe this would

10

be akin to purchasing a ticket to an out-of-state attraction in a forum state, but this has been held insufficient to establish personal jurisdiction over the attraction for an injury allegedly sustained at the attraction. See Russo v. Sea World of Florida, Inc., 709 F. Supp. 39, 43-44 (D. R.I. 1989) (holding that Sea World-Florida's nationwide advertising campaign and fact that allegedly injured tourist purchased ticket to attraction in Rhode Island was insufficient to establish personal jurisdiction over attraction in Rhode Island). Additionally, the mere fact that a plaintiff executes a contract in his or her home state and sends the contract back to an out-of-state defendant does not confer personal jurisdiction over the defendant. See Lane v. Vacation Charters, Ltd., 750 F. Supp. 120, 124 (S.D. N.Y. 1990) (stating, "The 'last formal act of [contract] execution . . . is of little, if any jurisdictional significance.'") (quoting Hoffritz for Cutlery, Inc. v. Amajac, Ltd., 763 F.2d 55, 60 n.2 (2nd Cir. 1985)).

Here, no goods were delivered to or from Indiana, nor were any services performed in Indiana, and the allegedly damaged boat was docked in Illinois, not Indiana, when it was not stored in Michigan. Although Leonard executed the contract on Dr. Brar's behalf in Indiana, the entirety of the contract's performance was to take place in Michigan, save for Dr. Brar's payment coming from Indiana. The contract was not in the nature of a long-term entanglement between the parties, as in Burger King, but instead was limited in duration and scope and was not automatically renewed from year-to-year. For the second year that Dr. Brar and Leonard contracted with Wolf's to store the boat, it again was Leonard who initiated contact with Wolf's, not vice versa. The contract also was a pre-printed form contract, created in Michigan and sent from Michigan to Indiana at Leonard's

11

request, and it was not the result of negotiations between the parties. Wolf's alleged negligence or breach of contract occurred in Michigan, not Indiana. Wolf's has no physical presence whatsoever in Indiana, in the form of facilities or employees. Also, Michigan has a greater interest than Indiana in ensuring that Wolf's is operating its facility in a proper manner. Wolf's deliberate contacts with Indiana were limited to general advertising, emailing a form contract to Leonard at Leonard's request, and invoicing and receiving payment from Leonard. We hold this was not sufficient "purposeful availment" of the privilege of conducting business in Indiana by Wolf's so as to permit Indiana to exercise specific personal jurisdiction over it with respect to Dr. Brar's cause of action.

**Conclusion**

The trial court incorrectly determined that personal jurisdiction over Wolf's existed in Indiana, and it should have granted Wolf's motion to dismiss. We reverse the denial of that motion.

Reversed.

ROBB, J., and BROWN, J., concur.