

**FILED**

Aug 06 2018, 10:17 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Charles E. Oswald
Harrison & Moberly, LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:
TAREK SHEHADEH

Christopher J. Evans
Shana D. Tesnar
Adler Tesnar & Whalin
Noblesville, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Beverly K. Oswald, | August 6, 2018 |
| *Appellant-Plaintiff,* | Court of Appeals Case No. 29A02-1711-PL-2627 |
| v. | Appeal from the Hamilton Superior Court |
| Tarek Shehadeh and Falon Vela, | The Honorable Steven R. Nation, Judge |
| *Appellees-Defendants* | The Honorable David K. Najjar, Magistrate |
| | Trial Court Cause No. 29D01-1701-PL-211 |

**Vaidik, Chief Judge.**

# Case Summary

[1] Beverly Oswald, an Indiana resident, sued Tarek Shehadeh and Falon Vela, Arkansas residents, in Indiana for breach of contract. Shehadeh and Vela

moved to have the suit dismissed for lack of personal jurisdiction. The trial court agreed that Indiana lacked personal jurisdiction over the defendants and dismissed the suit.[1]

[2] On appeal, Oswald contends that Shehadeh and Vela had sufficient minimum contacts in Indiana to give Indiana specific personal jurisdiction over the defendants and that exercise of personal jurisdiction over the defendants is reasonable. Shehadeh argues that personal jurisdiction does not exist in Indiana, and, even if he and Vela are subject to personal jurisdiction in Indiana, the contract at issue contains a forum-selection clause requiring Oswald's claim to be heard in Arkansas.[2] We agree with Oswald that Indiana can exercise personal jurisdiction over Shehadeh and Vela and that it is reasonable for Shehadeh and Vela to defend this matter in Indiana. Furthermore, the language of the contract is not a forum-selection clause but rather a choice-of-law provision requiring the trial court to apply Arkansas law. We reverse the trial court's order and remand for further proceedings.

---

[1] The trial court's order provides that the matter was dismissed under Indiana Trial Rule 12(B)(1)—lack of subject-matter jurisdiction. Appellant's App. Vol. II p. 6. However, on appeal, both Oswald and Shehadeh state that the case was dismissed for lack of personal jurisdiction. Appellant's Br. p. 11; Appellee's Br. p. 9 n.1 ("Appellee is compelled to conclude that lack of subject matter jurisdiction was likely not the substantive basis for the trial court's dismissal of Appellant's case below."). Based on our review of the record, we agree with the parties that the trial court's order contains a typographical error and that the court intended to dismiss this case under Indiana Trial Rule 12(B)(2)—lack of personal jurisdiction.

[2] Vela was unrepresented during the trial-court proceedings and did not file a brief on appeal. In cases where an appellee fails to submit a brief, we will not undertake the burden of developing arguments on her behalf. *Orlich v. Orlich*, 859 N.E.2d 671, 673 (Ind. Ct. App. 2006). Instead, we "apply a less stringent standard of review" and will reverse upon a showing of prima facie error, which is error "at first sight, on first appearance, or on the face of it." *Id.*

# Facts and Procedural History

[3]     Oswald is the sole owner of Eville Louie, LLC, which owns and operates Bar Louie restaurants and is headquartered in Indiana. In January 2010, Eville Louie owned and operated two Bar Louie Restaurants in the Little Rock, Arkansas area—Little Rock Louie, LLC, and North Rock Louie, LLC. One month later, Oswald interviewed candidates for the general-manager position of the Little Rock Louie restaurant. The interviews took place in Indiana, and Shehadeh was one of the applicants interviewed. During his interview, he expressed an interest in buying an ownership stake in Little Rock Louie and North Rock Louie. At the time, Oswald declined his offer but hired Shehadeh as the Little Rock Louie general manager. Shehadeh returned to Indiana in April 2010 to participate in a mandatory two-week Bar Louie training program. As part of his duties as general manager, Shehadeh repeatedly contacted Oswald and other Indiana residents, and he traveled to Indiana to attend Bar Louie management meetings.

[4]     In 2015, Shehadeh and Vela contacted Oswald in Indiana and expressed their interest in buying Little Rock Louie and North Rock Louie. Oswald agreed to sell the Arkansas restaurants to the pair. The sales contract was signed and executed in September 2015. As part of the terms of the sale, Shehadeh and Vela "assume[d] and agree[d] to pay all lender obligations relative to both businesses." Appellant's App. Vol. II p. 13. These obligations included twelve promissory notes—eight of which were held by Indiana residents or Indiana corporations. Shehadeh and Vela also agreed to pay Oswald annual

installments for the cost of the restaurants. At all relevant times, Oswald lived in Indiana.

[5] After Shehadeh and Vela began operating the Arkansas restaurants, they continued to use an Indiana payroll company, an Indiana insurance agent, and Indiana accountants. Shehadeh also "received corporate mail in Indiana" and continued to receive mail there as of October 2017. *Id.* at 51.

[6] In January 2017, Oswald sued Shehadeh and Vela in Hamilton County, Indiana, for breach of contract. Shehadeh and Vela separately moved for the case to be dismissed for lack of personal jurisdiction. Oswald responded and filed an affidavit in support of her position. Shehadeh replied and filed his own affidavit in support of his motion. After the hearing on the motions, the trial court concluded that Indiana lacked personal jurisdiction over Shehadeh and Vela and dismissed the case.

[7] Oswald now appeals.

# Discussion and Decision

[8] Oswald contends that the trial court erred when it granted the motions to dismiss because (1) there are sufficient minimum contacts to establish personal jurisdiction over Shehadeh and Vela and (2) Shehadeh and Vela have failed to prove that exercise of personal jurisdiction over them is unreasonable.

[9] Before we address Oswald's personal-jurisdiction argument, we first discuss Shehadeh's argument that paragraph 5.2 of the contract is a forum-selection

clause that requires Oswald to bring her claim in Arkansas. We disagree. Paragraph 5.2 reads, "This agreement shall be interpreted and enforced in accordance with the laws of the State of Arkansas." Appellant's App. Vol. II p. 13. We have long held that language requiring only that an agreement shall be **interpreted and enforced** under the laws of a specific state is a choice-of-law provision and not a forum-selection clause. *See Dexter Axle Co. v. Baan USA, Inc.*, 833 N.E.2d 43, 46 (Ind. Ct. App. 2005) (concluding that the software agreement contained only a choice-of-law provision because it required that the agreement "be interpreted and construed in accordance with the laws of Virginia"); *Albright v. Edward D. Jones & Co.*, 571 N.E.2d 1329, 1332 (Ind. Ct. App. 1991) (concluding that the clause, "This agreement and its enforcement shall be governed by the law of the State of Missouri," was a choice-of-law provision), *trans. denied*. To be a forum-selection clause, the provision must include language indicating that the parties have consented to have a particular jurisdiction hear a legal dispute arising under the contract. *See Dexter Axle Co.*, 833 N.E.2d at 47 (finding that the consulting agreement contained both choice-of-law and forum-selection clauses because the agreement stated, "This Agreement will be construed and controlled by the laws of the State of California, U.S.A. . . . and the parties mutually **consent to exclusive jurisdiction** and venue in the state and federal courts sitting in Santa Clara County, California." (emphasis added)); *Bowlers Country Club v. Royal Links USA, Inc.*, 846 N.E.2d 732, 734 n.2 (Ind. Ct. App. 2006) ("The RLU forum selection clause provides: 'Any action related to this Agreement may be brought only in the courts of Lucas County, Ohio, or, if it has or can acquire

jurisdiction, in the United States District Court for the Northern District of Ohio, Western Division.  Each party **consents to the exclusive jurisdiction** of such courts[.]'" (emphasis added)), *trans. denied.*  Paragraph 5.2 does not state that Oswald, Shehadeh, and Vela consent to the exclusive jurisdiction of Arkansas or any similar language.  Rather, the paragraph only requires that Arkansas law be applied by whatever court hears a dispute arising under the contract.  This is a choice-of-law provision, not a forum-selection clause.[3]

[10]  We turn now to Oswald's personal-jurisdiction argument.  Personal jurisdiction is a question of law, which we review de novo.  *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006).  We do not defer to the trial court's legal conclusion on whether personal jurisdiction exists.  *Id.*  Personal jurisdiction turns on the facts, "namely the extent of a defendant's contacts with the forum, and ordinarily a trial court's factual findings on that point would be reviewed for clear error."  *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014).  However, the trial court did not issue any findings of fact and made its ruling based on the paper records submitted by the parties and the arguments of counsel.  "In such a case, we are in as good a position as the trial court to

---

[3] Even if this case were litigated in Arkansas, we are convinced that the Arkansas court would reach the same conclusion that this language is a choice-of-law provision. *See Goodwin v. Magness Oil Co.*, CV-17-249, 2018 WL 2245652, --- S.W.3d --- (Ark. Ct. App. May 16, 2018) (concluding that the contract included **both** a choice-of-law provision and a forum-selection clause: "This Agreement shall be governed by and construed in accordance with the laws of the State of Arkansas.  Any action shall be adjudicated in the Circuit Court of Baxter County, Arkansas.").

determine the existence of jurisdictional facts and will employ de novo review as to those facts."[4]  *Id.* (quotations omitted).

[11]   Indiana Trial Rule 4.4(A)—Indiana's "long-arm" rule for exercising personal jurisdiction over out-of-state defendants—permits exercising personal jurisdiction in any manner that is consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution.  *LinkAmerica*, 857 N.E.2d at 965.  The Due Process Clause "requires that before a state may exercise jurisdiction over a defendant, the defendant must have 'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'"  *Id.* at 967 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  Indiana trial courts are courts of general jurisdiction, and jurisdiction is presumed.  *Keesling v. Winstead*, 858 N.E.2d 996, 1000 (Ind. Ct. App. 2006).  "Therefore, the plaintiff need not allege jurisdiction in its complaint."  *Id.* (citations omitted).  Once personal jurisdiction is challenged, usually by the defendant, "the plaintiff

---

[4] During the hearing, the trial court did not allow the parties to present any evidence because it believed that doing so would convert the motions to dismiss into motions for summary judgment.  Furthermore, the court indicated in its order that it did not consider the affidavits of the parties and only considered "the pleadings of the parties, the argument of counsel at the hearing, and the applicable law" in reaching its decision. Appellant's App. Vol. II p. 6.  On appeal, Shehadeh and Oswald disagree as to whether the trial court should have considered the affidavits they filed in support of and in opposition to the motions to dismiss.  A motion to dismiss for lack of personal jurisdiction is not treated as a motion for summary judgment because materials outside of the pleadings are filed.  *Mid-States Aircraft Engines, Inc. v. Mize Co., Inc.*, 467 N.E.2d 1242, 1247 (Ind. Ct. App. 1984).  This conversion-to-summary-judgment rule only applies to a motion to dismiss for failure to state a claim under Indiana Trial Rule 12(B)(6).  *See* Ind. Trial Rule 12(B).  In fact, when a defendant challenges personal jurisdiction, the plaintiff is not only permitted but required to present evidence to support her claim that personal jurisdiction over the defendant exists.  *Keesling v. Winstead*, 858 N.E.2d 996, 1000 (Ind. Ct. App. 2006).  Therefore, we have considered the parties' affidavits in our de novo review.

must present evidence to show that there is personal jurisdiction over the defendant." *Id.* Once the plaintiff satisfies her burden, the defendant must then present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

[12] Personal jurisdiction may be established in one of two ways. First, if the defendant's contacts with the forum state were so "continuous and systematic" that the defendant "should reasonably anticipate being haled into the courts of that state for any matter, then the defendant is subject to general jurisdiction[.]" *LinkAmerica*, 857 N.E.2d at 967. Even if the defendant's contacts are not "continuous and systematic," personal jurisdiction may be exercised "if the controversy is related to or arises out of the defendant's contacts with the forum state." *Id.* This is specific jurisdiction, and it requires that the "defendant purposefully availed itself of the privilege of conducting activities within the forum state so that the defendant reasonably anticipates being haled into court there." *Id.*

[13] Oswald contends that specific jurisdiction exists because: Shehadeh and Vela solicited Oswald in Indiana for the sale of her Arkansas restaurants; Shehadeh and Vela signed the sales contract and sent it to Indiana for Oswald to sign; the payment for the restaurants was sent to Indiana; Shehadeh and Vela assumed many of Oswald's debts with Indiana vendors; after taking over operational control of the restaurants, Shehadeh and Vela continued to use Indiana vendors for the company payroll, insurance, and accounting; and Shehadeh maintained

a corporate mailbox in Indiana for the restaurants. Shehadeh does not rebut any of Oswald's claims; rather, he contends that "enter[ing] into a contract with an Indiana resident, is, without more, insufficient to subject him to suit in Indiana." Appellee's Br. p. 16. Shehadeh is correct; a contract, by itself, is insufficient to subject him to suit in Indiana. *See Burger King*, 471 U.S. at 478 ("If the question is whether an individual's contract with an out-of-state party **alone** can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot."). But, as Oswald points out, there was more than just a contract in this matter; there were multiple contacts with Indiana, some of which are still ongoing.

[14] Nevertheless, Shehadeh relies on our decision in *Wolf's Marine* to support his contention that Indiana does not have personal jurisdiction. In *Wolf's Marine*, an Indiana resident sued a Michigan company in Indiana for breach of contract and claimed specific personal jurisdiction. The Indiana resident made the initial contact with the company in Michigan, the contract was for a limited duration and scope, the contract was fully executed in Michigan, and no goods were delivered to or from Indiana. We concluded that the Michigan company did not have sufficient minimum contacts with Indiana to permit the state to exercise specific jurisdiction over it. We find that Shehadeh's reliance on this case is misplaced. Unlike *Wolf's Marine*, Shehadeh solicited Oswald in Indiana to sell her restaurants. The contract was a multi-year agreement requiring Shehadeh and Vela to make annual payments to Oswald in Indiana. And, as already discussed, after the contract was executed Shehadeh and Vela

maintained multiple business relationships with Indiana companies and residents and maintained a mailbox in Indiana for the restaurants. We conclude that Oswald has met her burden of proving that Shehadeh and Vela have sufficient minimum contacts related to the contract in Indiana for there to be specific personal jurisdiction here.[5]

[15] Our inquiry does not stop here, however. We must also ensure that it is reasonable for Shehadeh and Vela to litigate this matter in Indiana. "[I]f the defendant has contacts with the forum state sufficient for general or specific jurisdiction, due process requires that the assertion of personal jurisdiction over the defendant is reasonable." *LinkAmerica*, 857 N.E.2d at 967. Reasonableness is determined by balancing five factors:

> (1) the burden on the defendant; (2) the forum State's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenien[t] and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several States in furthering fundamental substantive social policies.

*Id.* at 967-68 (citing *Burger King*, 471 U.S. at 476-77). The burden is on the defendant to present "a compelling case that the presence of some other

---

[5] Because we conclude that there is specific personal jurisdiction in this case, we do not address the parties' arguments regarding general personal jurisdiction.

considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

[16] Shehadeh claims that it is unduly burdensome on him to travel to Indiana to litigate this matter because he is a resident of Arkansas, bought businesses located in Arkansas, and "signed a contract which he **might have** reasonably believed would not only be governed by Arkansas law but also enforced in the state of Arkansas, should that become necessary." Appellee's Br. p. 19 (emphasis added). He also points out that the contract discloses the involvement of Arkansas lenders. Shehadeh, however, does not state that any evidence or witnesses in support of his defense would become unavailable if the case were litigated in Indiana. He has failed to show how proceeding in Indiana will burden him.

[17] As for factor two, Shehadeh states, "Arkansas clearly has a more substantial interest than Indiana in adjudicating this dispute." *Id*. He then lays out all of the reasons why Arkansas is interested in adjudicating this dispute. But the question isn't whether another state has an interest in adjudicating the dispute; it is whether Indiana, as the forum state, has an interest in adjudicating the dispute. Shehadeh has failed to meet his burden on the second factor.

[18] Shehadeh concedes "that it is likely convenient for Oswald to litigate the merits of this case in an Indiana forum." *Id.* at 20. He then argues that this convenience does not outweigh the "disadvantages occasioned upon [him] in having to litigate this dispute in a foreign forum[.]" *Id.* Shehadeh's argument is

unrelated to the factor being weighed. He has conceded factor three in favor of Oswald.

[19] Regarding the fourth factor—the interstate judicial system's interest in obtaining the most efficient resolution of controversies—Shehadeh correctly points out that if Oswald succeeds on the merits of her claim, she will have to have the judgment enforced in Arkansas. Shehadeh, however, does not point to any case law that says Arkansas will not enforce an out-of-state judgment. To the contrary, "The State of Arkansas must give full faith and credit to foreign judgments under the U.S. Constitution." *Amant v. Callahan*, 20 S.W.3d 896, 898 (Ark. 2000) (citing U.S. Const. art. 4, § 1; Ark. Code Ann. § 16-66-602; *First Commercial Trust Co. v. Rank*, 915 S.W.2d 262 (Ark. 1996)). Shehadeh also contends that Arkansas should hear the case because paragraph 5.2 of the contract requires the court to apply Arkansas law. But he offers no argument as to why Indiana courts are incapable of correctly interpreting and applying Arkansas law. Our trial courts have historically adjudicated matters requiring them to interpret and apply a foreign jurisdiction's law. *See Berberena v. State*, 86 N.E.3d 199 (Ind. Ct. App. 2017) (comparing Illinois and Indiana statutes to determine if defendant was a serious violent felon); *Hollingsworth v. State*, 907 N.E.2d 1026 (Ind. Ct. App. 2009) (comparing Arkansas and Indiana statutes to determine if defendant was a serious violent felon); *Mann v. State*, 754 N.E.2d 544 (Ind. Ct. App. 2001) (comparing Ohio and Indiana statutes for enhanced felony conviction).

As to the fifth and final factor, Shehadeh states that the connection to this matter is "real and tangible for the state of Arkansas in a way that is not for Indiana, and the truth of this proposition seems rather obvious." Appellee's Br. p. 20. He does not elaborate on this statement nor does he make an argument for why litigating this matter in Arkansas would further fundamental and substantive social policies. Again, his argument is unrelated to the factor being weighed.

Balancing all five factors, we conclude that Shehadeh has failed to meet his burden to present a compelling case for why litigating this dispute in Indiana is unreasonable. In sum, Shehadeh and Vela have sufficient minimum contacts with Indiana for the court to exercise personal jurisdiction over them, and their due-process rights will not be violated by requiring them to litigate this matter in Indiana.

Reversed and remanded.

Pyle, J., and Barnes, Sr. J., concur.