

FILED

Jun 29 2026, 8:58 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Ed Carpenter Racing, LLC,

*Appellant-Plaintiff,*

v.

Milton "Todd" Ault, III, and VForward2, LLC,

*Appellees-Defendants.*

---

June 29, 2026

Court of Appeals Case No.
25A-CC-2721

Appeal from the
Marion Superior Court

The Honorable
Kurt Eisgruber, Judge

Trial Court Cause No.
49D06-2505-CC-22323

**Opinion by Senior Judge Crone**
Judges Mathias and Pyle concur.

**Crone, Senior Judge.**

## Statement of the Case

Ed Carpenter Racing, LLC, appeals the dismissal of its complaint for damages against Milton "Todd" Ault, III, and VForward2, LLC. Concluding that the trial court's dismissal of the complaint was not error but that the dismissal should not have been with prejudice, we affirm in part and reverse and remand in part.

## Issues

We address two issues:

> I. Whether the trial court erred by dismissing Ed Carpenter Racing's complaint against Ault; and

> II. Whether the trial court erred by dismissing Ed Carpenter Racing's complaint against VForward2.

## Facts and Procedural History

In May 2025, Ed Carpenter Racing filed its complaint against Ault and VForward2, seeking damages in the amount of $8,400,000. The complaint alleged that Ault breached a personal guaranty to Ed Carpenter Racing and that VForward2 breached a sponsorship agreement with Ed Carpenter Racing for

the 2024 NTT Indy Car Series. Alternatively, Ed Carpenter Racing claimed that it should recover from both Ault and VForward2 for unjust enrichment.

[4] Ault and VForward2 filed a motion to dismiss the complaint. The court heard argument on the motion and subsequently entered its order dismissing the complaint with prejudice and entering final judgment in favor of Ault and VForward2. In dismissing the complaint against Ault, the court determined that (1) it lacked personal jurisdiction over Ault under Trial Rule 12(B)(2), (2) Ed Carpenter Racing failed to state a claim against Ault under Trial Rule 12(B)(6), and (3) Ault was entitled to judgment on the pleadings under Trial Rule 12(C). The court found the following:

> 1. As acknowledged in the Complaint, Defendant Ault is a resident of Nevada. Comp. ¶ 3. Ault may be an active participant in sponsoring Indy cars at the Indianapolis 500, but under the facts and circumstances of this case, emails exchanged between Defendant Ault and ECR negotiating a possible guaranty are insufficient to establish a valid contractual basis for personal jurisdiction over Defendant Ault under INTR 12(B)(2). Indiana's Statute of Frauds (Ind. Code § 32-21-1-1(b)(2)) requires a signature by a guarantor on a guarantee which Plaintiff does not evidence. Without a valid contractual basis, Plaintiff cannot establish that Defendant Ault has sufficient minimum contacts in Indiana to pursue this action as to Counts I and III. The Motion to Dismiss is GRANTED under INTR 12(B)(2).

> 2. As previously discussed, the Personal Guaranty attached to Plaintiff's Complaint as Exhibit A was never signed by Defendant Ault. In addition, he is not referenced in the

Sponsorship Agreement attached to Plaintiff's Complaint as Exhibit B which was also not executed. Since he was not a party to the Sponsorship Agreement, he did not personally benefit from Sponsorship Agreement, and consequently was not unjustly enriched. For these reasons, Defendant Ault's Motion is GRANTED under INTR 12(B)(6) and INTR 12(C) as to both Counts I and III.

Appellant's App. Vol. 2, p. 8.

[5] Likewise, the court dismissed the complaint against VForward2, determining that (1) Ed Carpenter Racing failed to state a claim against VForward2 under Trial Rule 12(B)(6) and (2) VForward2 was entitled to judgment on the pleadings under Trial Rule 12(C). The court found:

> 1. As discussed, the emails referenced in Plaintiff's Complaint and advanced by Plaintiff as evidence of offer and acceptance of the terms of both the Personal Guaranty and the Sponsorship Agreement, are nothing more than the parties attempting to negotiate an agreement. VF2 never signed a Sponsorship Agreement with ECR and w[as] never contractually bound to ECR. To the extent that ECR placed RiskOn logos or any logos related to the Sponsorship Agreement on [its] cars was a choice made by ECR alone. For these reasons, Defendant VF2's Motion is GRANTED under INTR 12(B)(6) and INTR 12(C) as to both Counts II and III.

*Id.* at 8-9. Ed Carpenter Racing now appeals the dismissal of its complaint.[1]

---

[1] By separate order issued simultaneously with this opinion, we deny Ed Carpenter Racing's motion to strike appellees' appendix.

# Discussion and Decision

## I. Complaint against Defendant Ault

[6] Ed Carpenter Racing argues that the trial court erred by granting Ault's motion to dismiss pursuant to Trial Rule 12(B)(2) for lack of personal jurisdiction. The existence of personal jurisdiction is a question of law that we review de novo. *LinkAmerica Corp. v. Cox*, 857 N.E.2d 961, 965 (Ind. 2006) (quoting *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1237 (Ind. 2000), *superseded by rule as stated in LinkAmerica*, 857 N.E.2d 961). Yet, whether personal jurisdiction exists can hinge on facts concerning the defendant's contacts with the forum state, and where the trial court issues findings of jurisdictional facts, we review those findings for clear error. *Aquatherm GmbH v. Renaissance Assocs. I Ltd. P'ship*, 140 N.E.3d 349, 357 (Ind. Ct. App. 2020). Accordingly, we will reverse the court's factual findings only when the record contains no facts to support them either directly or indirectly. *Id.*

[7] When a defendant challenges personal jurisdiction, the plaintiff is not only permitted but required to present evidence (i.e., materials outside the pleadings) to support its claim that personal jurisdiction over the defendant exists. *Oswald v. Shehadeh*, 108 N.E.3d 911, 916 n.4 (Ind. Ct. App. 2018) (citing *Keesling v. Winstead*, 858 N.E.2d 996, 1000 (Ind. Ct. App. 2006)). In fact, both parties are permitted to file materials outside the pleadings, such as affidavits and exhibits, to assist the court in adjudicating a Rule 12(B)(2) motion to dismiss. *See Oswald*, 108 N.E.3d at 916 n.4 (citing *Mid-States Aircraft Engines, Inc. v. Mize Co., Inc.*, 467 N.E.2d 1242, 1247 (Ind. Ct. App. 1984)). Although the plaintiff must

present evidence of personal jurisdiction, the defendant bears the ultimate burden of proving lack of jurisdiction by a preponderance of the evidence, unless the jurisdictional defect is apparent on the face of the complaint. *Aquatherm GmbH*, 140 N.E.3d at 357 (quoting *Wolf's Marine, Inc. v. Brar*, 3 N.E.3d 12, 15 (Ind. Ct. App. 2014)).

[8] "Indiana Trial Rule 4.4(A) is Indiana's equivalent of a 'long-arm statute.'" *Aquatherm GmbH*, 140 N.E.3d at 357. In 2003, Trial Rule 4.4(A), which contains a list of acts that can serve as a basis for jurisdiction, was amended to also provide that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Our Supreme Court has explained that, while the acts enumerated in Rule 4.4(A) serve as a "handy checklist of activities that usually support personal jurisdiction," the new catchall language "was intended to, and does, reduce analysis of personal jurisdiction to the issue of whether the exercise of personal jurisdiction is consistent with the Federal Due Process Clause." *LinkAmerica*, 857 N.E.2d at 967.

[9] More specifically, before an Indiana court can properly exercise personal jurisdiction over a defendant, the Due Process Clause of the Fourteenth Amendment mandates that the defendant have "'certain minimum contacts with [the state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). There are two types of personal jurisdiction: general and specific. *Aquatherm GmbH*, 140 N.E.3d at 358.

## A. General Jurisdiction

Minimum contacts with a forum state that establish general personal jurisdiction over a nonresident defendant are those contacts that are "so 'continuous and systematic' that the defendant should reasonably anticipate being haled into the state's courts for any matter." *Simek v. Nolan*, 64 N.E.3d 1237, 1242 (Ind. Ct. App. 2016) (quoting *LinkAmerica*, 857 N.E.2d at 967). Ed Carpenter Racing has not alleged that Ault, who is a resident of Nevada, maintains a constant presence in Indiana that would support general jurisdiction.

## B. Specific Jurisdiction

A state may exercise specific jurisdiction when a defendant has purposefully availed itself of the privilege of conducting activities within the forum state and the lawsuit relates to or arises out of those activities or contacts. *LinkAmerica*, 857 N.E.2d at 967. Analysis of the defendant's minimum contacts sufficient to create a substantial connection with the forum state focuses on the relationship between the nonresident defendant, the forum, and the lawsuit. *Ysursa v. Frontier Pro. Baseball, Inc.*, 151 N.E.3d 275, 280 (Ind. Ct. App. 2020) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)), *trans. denied*. A defendant simply having contact or a connection with people who reside in the forum state is not enough to establish this substantial connection. *Boyer v. Smith*, 42 N.E.3d 505, 511 (Ind. 2015). And random, fortuitous, or attenuated contacts or the unilateral activity of another party or of a third person are not sufficient to

establish specific jurisdiction over an out-of-state defendant. *Simek*, 64 N.E.3d at 1243 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-77 (1985)).[2]

[12] Ed Carpenter Racing contends that specific personal jurisdiction over Ault exists because Ault has done business in this state in the following ways: (a) agreed to the personal guaranty, (b) agreed to the sponsorship agreement, (c) owned or controlled VForward2, (d) participated in the 2024 Indianapolis 500, (e) took actions as the owner or controlling person of VForward2, and (f) sent emails to Ed Carpenter Racing, an Indiana corporation. Appellant's Br. pp. 43-44.

(a) Agreed to Personal Guaranty

[13] First, there is no dispute that Ault did not sign the personal guaranty contract. Although Ed Carpenter Racing claims that the trial court has personal jurisdiction over Ault "by and through Mr. Ault's Personal Guaranty," counsel for Ed Carpenter Racing acknowledged at the hearing that the guaranty is not signed or executed. Appellant's Br. p. 39; Tr. Vol. 2, pp. 15-16.

[14] In order to circumvent the lack of signature on the personal guaranty, Ed Carpenter Racing argues that Ault's electronic signature on two emails constitutes his signature on the guaranty. Appellant's Br. pp. 45-47. The first

---

[2] Even if a defendant's contacts are sufficient to confer personal jurisdiction, due process also requires that the assertion of jurisdiction over the defendant be reasonable. *LinkAmerica*, 857 N.E.2d at 967. Because we conclude that Ault did not have sufficient minimum contacts with Indiana, we need not reach the reasonableness inquiry.

of the two emails was purportedly sent by Ault in February 2025. A copy of the purported email was neither attached to the complaint nor introduced as evidence at the hearing in this case. Consequently, Ed Carpenter Racing has presented no evidence of an electronic signature by Ault to support its assertion. Not only was there no evidence of an electronic signature but also no address from which the email originated or address to which the email was sent.[3] We further observe that the alleged email was sent in February 2025 *after* the 2024 racing season to which it pertained. *See* Appellant's App. Vol. 2, pp. 24 (Guaranty), 31 (Sponsorship Agreement ¶ 4.1) (guaranty pertains to 2024 racing season and refers to payment schedule in 2024 sponsorship agreement, which required that payment be made in full by November 15, 2024).

[15] The second purported email was sent *to* Ault by someone else and thus would not contain Ault's electronic signature. Accordingly, we do not address it. *See* Tr. Vol. 2, p. 18; Appellant's App. Vol. 2, p. 17 (Complaint ¶ 12(a)B.).

[16] For his part, Ault points to the fact that the guaranty was never signed and that there is not a single allegation that he did so. Exhibit 4 to VForward2's answer/counterclaim is an email dated March 6, 2024 from John Stewart as president/managing partner of VForward LLC to Ault explaining that Ed

---

[3] We note that even if we had evidence of Ault's email address, that evidence may not be sufficient to show that the email was authored by Ault. *See Arnett v. Est. of Beavins by Beavins*, 184 N.E.3d 679, 686 n.5 (Ind. Ct. App. 2022) (quoting *Pavlovich v. State*, 6 N.E.3d 969, 976 (Ind. Ct. App. 2014), *trans. denied*) (observing that email address alone might be insufficient to authenticate email messages as having been authored by person linked to email address).

Carpenter Racing was requesting that Ault execute a personal guaranty. Appellees' App. Vol. II, p. 71. Ault responded to Stewart later that same day that he would review the guaranty "but it's unlikely that I would sign a personal guarantee[, and] you should not do that either." *Id.* at 70. Further, Ault deems "nonsensical" Ed Carpenter Racing's allegation that Ault would agree in 2025 "to guarantee something after all of the obligations were already defaulted" in 2024. Tr. Vol. 2, p. 37.

(b) Agreed to Sponsorship Agreement

[17] The sponsorship agreement does not reference Ault, contains a signature line not for Ault or any of the entities Ed Carpenter Racing alleges are connected to Ault but rather for "V-FORWARD2, LLC", and is unsigned, undated, and unexecuted. *See* Appellant's App. Vol. 2, pp. 25-39; Appellant's Br. p. 39. Ed Carpenter Racing admits that, like the guaranty, the sponsorship agreement was never signed. Tr. Vol. 2, pp. 15-16.

(c) Owned or Controlled VForward2, LLC and (e) Took Actions as Owner or Controlling Person of VForward2, LLC

[18] Ed Carpenter Racing next asserts that Ault owned or controlled VForward2 and took actions in this capacity. Ed Carpenter Racing offers no evidence to support its contention that Ault had some ownership or control of VForward2. Ault asserts that he is not a member of VForward2 and that the company has only two shareholders, John and Suzanne Stewart. Tr. Vol. 2, pp. 5, 11. Nevertheless, merely owning or partially controlling a business entity is not

sufficient to subject a business owner to individual personal jurisdiction in the state. *Cf. LinkAmerica*, 857 N.E.2d at 970 (determining that actions of subsidiary corporation do not ordinarily establish personal jurisdiction over its parent).

(d) Participated in 2024 Indianapolis 500

Ed Carpenter Racing presented no evidence of Ault's alleged participation in the 2024 Indianapolis 500 or analysis of how that participation established the minimum contacts necessary for personal jurisdiction.

(f) Sent Emails to Ed Carpenter Racing

Ed Carpenter Racing alleges Ault further engaged in conduct including: "[s]ending at least one email, and many other emails not referenced within the Complaint[*], to and within the State of Indiana to Members of an Indiana limited liability company, *i.e.*, Ed Carpenter Racing[.]" Appellant's Br. p. 44. Other than the email purportedly sent by Ault that we addressed under the heading (a) Agreed to Personal Guaranty, *supra*, Ed Carpenter Racing presented no information or evidence for the trial court to examine on this subject. Moreover, simply having contact with people who reside in the forum state is not sufficient to establish specific personal jurisdiction over an out-of-state defendant. *Boyer*, 42 N.E.3d at 511.

In sum, Ed Carpenter Racing, though required to support its claim that personal jurisdiction over Ault exists, has failed to offer any evidence of

minimum contacts or substantial connection of Ault to this state. Ault, on the other hand, has met his burden of proving lack of jurisdiction by a preponderance of the evidence. The record shows that he does not have sufficient minimum contacts or a substantial connection with Indiana and that he cannot be said to have purposely availed himself of the privilege of conducting activities within the state. Therefore, the trial court did not err by dismissing Ed Carpenter Racing's complaint against Ault pursuant to Trial Rule 12(B)(2).

[22] However, on this issue the court dismissed the complaint with prejudice, and that was error. "A dismissal with prejudice is a dismissal on the merits." *Brodnik v. Cottage Rents LLC*, 165 N.E.3d 126, 128-29 (Ind. Ct. App. 2021). Yet, a dismissal for lack of personal jurisdiction is not an adjudication on the merits. *O'Bryant v. Adams*, 123 N.E.3d 689, 695 (Ind. 2019). Consequently, we remand for the court to amend its order to a dismissal without prejudice as to Ault for lack of personal jurisdiction under Trial Rule 12(B)(2).

[23] Further, we address the trial court's dismissal of Ed Carpenter Racing's claims against Ault pursuant to Trial Rules 12(B)(6) and 12(C). The trial court's dismissal of the complaint against Ault for lack of personal jurisdiction means the court lacked the power to act. *Cf. Boyer*, 42 N.E.3d at 508 (stating that jurisdictional challenges require trial courts to address threshold question concerning their power to act). Therefore, when the court, after determining that it lacked personal jurisdiction over Ault, considered and ruled on Ault's motion under Trial Rules 12(B)(6) and 12(C), it did not have the power to do

so. *See Perry v. Stitzer Buick GMC, Inc.*, 637 N.E.2d 1282, 1286 (Ind. 1994) (citing *Suyemasa v. Myers*, 420 N.E.2d 1334 (Ind. Ct. App. 1981)) (stating that trial court lacking jurisdiction is without power to rule on T.R. 12(B)(6) motion). Accordingly, we reverse the trial court's grant of Ault's motion to dismiss under Rules 12(B)(6) and 12(C).

## II. Complaint against VForward2, LLC

The trial court granted with prejudice VForward2's motion to dismiss pursuant to Trial Rules 12(B)(6) and 12(C).

As VForward2 did in this case, a defense of failure to state a claim upon which relief can be granted can be raised under either or both Trial Rule 12(B)(6) and Trial Rule 12(C). *Mourning v. Allison Transmission, Inc.*, 72 N.E.3d 482, 487 (Ind. Ct. App. 2017). Generally, while a Trial Rule 12(C) motion for judgment on the pleadings is substantive, a Trial Rule 12(B)(6) motion is essentially procedural, and a Rule 12(B)(6) dismissal is without prejudice because the plaintiff has a right to file an amended complaint. *City of Boonville v. Anderson*, 263 N.E.3d 727, 737 (Ind. Ct. App. 2025); *see also* Ind. Trial Rule 12(B) ("When a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right pursuant to Rule 15(A) within ten [10] days after service of notice of the court's order sustaining the motion and thereafter with permission of the court pursuant to such rule.").

[26] However, when a Trial Rule 12(C) motion for judgment on the pleadings raises a defense of failure to state a claim upon which relief can be granted, the motion for purposes of that defense is to be treated in the same manner as a Trial Rule 12(B)(6) motion to dismiss for failure to state a claim. *Mourning*, 72 N.E.3d at 487. "The rationale for this rule is that a plaintiff's right to amend a complaint should not be based on whether the defendant's challenge to its sufficiency is brought under the guise of Trial Rule 12(B)(6) or Trial Rule 12(C)." *Id.*

[27] Here, the trial court erred by evaluating VForward2's Trial Rule 12(C) motion as separate from its Rule 12(B)(6) motion and dismissing Ed Carpenter Racing's complaint against VForward2 with prejudice. Accordingly, we will proceed with our review, under Trial Rule 12(B)(6) standards, of whether Ed Carpenter Racing failed to state a claim upon which relief can be granted against VForward2, and if we determine that it did, we will remand the case to give Ed Carpenter Racing an opportunity to amend its claim against VForward2 as provided by Trial Rule 12(B).

[28] A Trial Rule 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted "'tests the legal sufficiency of the claim, not the facts supporting it.'" *Estate of Morgan by Hullett v. Morgan*, 263 N.E.3d 758, 762 (Ind. Ct. App. 2025) (quoting *Thornton v. State*, 43 N.E.3d 585, 587 (Ind. 2015)), *trans. denied.* In ruling on such a motion, the court must examine the pleadings in the light most favorable to the nonmoving party and construe all reasonable inferences in favor of that party. *Id.*

We review de novo a Rule 12(B)(6) dismissal. *City of Boonville*, 263 N.E.3d at 737. And we will not affirm such a dismissal unless it is apparent that the allegations in the disputed pleading are incapable of supporting relief under any set of circumstances. *John Simpson & Monroe LLC v. Brown Cnty. Bd. of Comm'rs*, 213 N.E.3d 1081, 1083 (Ind. Ct. App. 2023) (quoting *Thornton*, 43 N.E.3d at 587). We look only to the complaint and no other evidence in the record to make this determination. *Gasbi, LLC v. Sanders*, 120 N.E.3d 614, 617 (Ind. Ct. App. 2019), *trans. denied*.

Nevertheless, when reviewing a Rule 12(B)(6) motion, a court need not accept as true allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading, conclusory, non-factual assertions, or legal conclusions. *Irish v. Woods*, 864 N.E.2d 1117, 1120 (Ind. Ct. App. 2007). Moreover, it is well settled that "'when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations.'" *Id.* (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998)). Thus, by attaching documents to the complaint that indicate that it is not entitled to judgment, a plaintiff may plead itself out of court. *Id.* (quoting *N. Ind. Gun & Outdoor Shows*, 163 F.3d at 455).

## A. Count II – Breach of Contract

Count II of the complaint alleges that VForward2 breached its contract with Ed Carpenter Racing, namely the sponsorship agreement. *See* Appellant's App. Vol. 2, p. 20 (Complaint ¶¶ 19-21). It is well settled that to recover for a breach of contract, a plaintiff must prove that: "'(1) a contract existed, (2) the

defendant breached the contract, and (3) the plaintiff suffered damage as a result of the defendant's breach.'" *Transp. Leasing/Cont., Inc. v. Northland Ins. Co.*, 271 N.E.3d 180, 188 (Ind. Ct. App. 2025) (quoting *Collins v. McKinney*, 871 N.E.2d 363, 370 (Ind. Ct. App. 2007)). The question in this case hinges on the existence of a valid contract, which requires offer, acceptance, consideration, and manifestation of mutual assent. *Martins v. Hill*, 121 N.E.3d 1066, 1068 (Ind. Ct. App. 2019).

[32] In its complaint, Ed Carpenter Racing states that Exhibit B to the complaint is an "authentic and complete copy" of the sponsorship agreement. Appellant's App. Vol. 2, p. 13 (Complaint ¶ 6). As we discussed in Issue I., *supra*, Exhibit B is unsigned and undated, *see id.* at 25-39, and Ed Carpenter Racing concedes the sponsorship agreement was never signed.[4] Tr. Vol. 2, pp. 15-16. "Of particular importance in the creation of a contract is that an offer must be extended, and the offeree must accept it; the communication of acceptance is 'crucial.'" *Derr Enters., LLC v. Union City Ind. Props., LLC*, 253 N.E.3d 1129, 1134 (Ind. Ct. App. 2025) (quoting *Tchrs. Credit Union v. Cripe*, 248 N.E.3d 1230, 1237 (Ind. Ct. App. 2024), *trans. denied*). Nothing in the complaint or the attached exhibits alleges acceptance by VForward2 of the sponsorship contract offered by Ed

---

[4] Although Ed Carpenter Racing attempts to invoke the doctrines of part performance and promissory estoppel as exceptions to the statute of frauds, we do not address these theories because neither of them were raised in the complaint, as the trial court astutely noted. *See Gasbi*, 120 N.E.3d at 617 (in evaluating Rule 12(B)(6) motion we look only to complaint); *see* Tr. Vol. 2, p. 22.

Carpenter Racing. Consequently, the unexecuted sponsorship agreement contained in Exhibit B to the complaint trumps Ed Carpenter Racing's complaint allegation that VForward2 agreed to the sponsorship agreement to form a contract.

## B. Count III – Unjust Enrichment

[33] Ed Carpenter Racing also challenges the trial court's dismissal of its complaint on Count III. In Count III, Ed Carpenter Racing alleges an alternative basis of recovery against VForward2, namely unjust enrichment.

[34] In the absence of a contract, a party may recover under the theory of unjust enrichment to recoup the "'value of services rendered just as if there had been a true contract.'" *Troutwine Ests. Dev. Co., LLC v. Comsub Design & Eng'g, Inc.*, 854 N.E.2d 890, 897 (Ind. Ct. App. 2006) (quoting *Kelly v. Levandoski*, 825 N.E.2d 850, 860 (Ind. Ct. App. 2005), *trans. denied*), *trans. denied*. To prevail on a claim of unjust enrichment, the plaintiff must show that it provided a benefit to the defendant at the defendant's express or implied request, that it expected payment from the defendant, and that allowing the defendant to retain the benefit without restitution would be unjust. *Andrew Nemeth Props., LLC v. Panzica*, 271 N.E.3d 1100, 1114 (Ind. 2025) (quoting *Reed v. Reid*, 980 N.E.2d 277, 296 (Ind. 2012)).

[35] Here, the complaint contains no allegation that VForward2 impliedly or expressly requested Ed Carpenter Racing to place its sponsor marks on Ed Carpenter Racing's race cars for the 2024 season. As it is apparent that the

allegations in Ed Carpenter Racing's complaint are incapable of supporting relief under any set of circumstances on its clam for unjust enrichment, the trial court's dismissal of this claim under Rule 12(B)(6) was proper. Consequently, we remand to the trial court to allow Ed Carpenter Racing the opportunity to amend its complaint as provided by Trial Rule 12(B).

[36] Finally, we would be remiss if we did not address footnote 9 in Ed Carpenter Racing's brief which sets forth the number of times Judge Eisgruber's decisions have been appealed to this Court or to our Supreme Court. *See* Appellant's Br. p. 35 n.9. We decide each case on its individual merit without reference to the number of or outcome of prior appeals of a trial judge's decisions. And we "'do not look favorably upon disparaging and disrespectful language in briefs'" with regard to the trial courts of this state. *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 365 (Ind. Ct. App. 2021) (quoting *Small v. Centocor, Inc.*, 731 N.E.2d 22, 31 (Ind. Ct. App. 2000), *trans. denied*). The purpose of a brief is to inform and educate the Court to assist in bringing the controversy to a proper resolution rather than to engage in irrelevant commentary.

## Conclusion

[37] Based on the foregoing, we conclude that there was no evidence that Ault established a substantial connection between himself and this state as would support personal jurisdiction. Therefore, we affirm the trial court's dismissal of Ed Carpenter Racing's complaint against Ault under Trial Rule 12(B)(2) for lack of personal jurisdiction but reverse the trial court's entry of such with

prejudice and remand for entry of the dismissal without prejudice. We also reverse the trial court's dismissal of the complaint against Ault pursuant to Trial Rules 12(B)(6) and 12(C).

[38] We further conclude that Ed Carpenter Racing's complaint fails to plead plausible claims against VForward2 for breach of contract and unjust enrichment. Therefore, we affirm the trial court's dismissal of the complaint against VForward2 pursuant to Trial Rule 12(B)(6), reverse the trial court's dismissal of the complaint under Trial Rule 12(C), and remand the case to give Ed Carpenter Racing an opportunity to amend its claim against VForward2 as provided by Trial Rule 12(B).

[39] Affirmed in part and reversed and remanded in part.

Mathias, J., and Pyle, J., concur.

ATTORNEY FOR APPELLANT

Richard B. Kaufman
Indianapolis, Indiana

ATTORNEYS FOR APPELLEES

Jeffrey M. Heinzmann
Heinzmann Law Office LLC
Fishers, Indiana

Robert B. Volynsky
Weltz Kakos Gerbi Wolinetz Volynsky LLP
Carle Place, New York